No. 26,271.

CHARLES E. MOORE, *Appellee,* v. MAUD S. MILLER et al., *Appellees* (CERENA HOSS, *Appellant*).

SYLLABUS BY THE COURT.

1. WITNESSES—*Competency—Communications of Adverse Party With Persons Since Deceased—Letters.* The statute providing that an adverse party shall not be allowed to testify in respect to a communication or transaction had personally by him with a person since deceased does not prohibit the payee of a promissory note from testifying that she received a letter purporting to have been written by the deceased in which he acknowledged the obligation and promised to pay the note, which on its face was barred by the statute of limitations at the time of the trial.

2. SAME. The letter, which passed through the mail, not having been written in the presence of the witness, her testimony as to its receipt cannot be regarded as a personal communication or transaction with the deceased within the meaning of the statute, nor was she prohibited from giving her opinion as to the genuineness of the signature.

Appeal from Greenwood district court, division No. 1; ALLISON T. AYRES, judge. Opinion filed November 7, 1925. Reversed.

*S. F. Wicker* and *Gordon A. Badger,* both of Eureka, for the appellant.

*A. C. Wilson,* of Wichita, and *Paul H. MacCaskill,* of Eureka, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: On February 12, 1910, A. B. Miller executed a promissory note of $1,000 in favor of Cerena Hoss, and to secure its payment executed a mortgage on real property in Eureka. Later, and on September 15, he executed a second mortgage on the same property to secure a note given to Charles E. Moore for $225, on which only $76.03 was paid. In February, 1923, Miller died, and in March, 1923, Moore commenced this action on his note and mortgage, making the heirs of Miller and the administrator of his estate, as well as Cerena Hoss, defendants, and as to the latter he alleged

---

1. Witnesses, 40 Cyc. p. 2298; 28 R. C. L. 498.   2. Id., 40 Cyc. pp. 2326, 2327.

that her note had been satisfied and discharged. The only service obtained on Cerena Hoss was a publication notice. None of the defendants appeared or answered, and on October 9, 1923, judgment by default in favor of Moore was rendered. On March 25, 1924, Cerena Hoss moved the court to open up the judgment and allow her to come in and make her defense, and at that time filed her cross petition and answer setting up her note and mortgage, which she alleged were still unpaid. She averred that although the note and mortgage were long past due, they were not barred because Miller in his lifetime and within five years had made a written acknowledgment in a letter, a copy of which she did not attach for the alleged reason that it was not in her possession. Moore replied that the Hoss note was effectually barred by the statute of limitations and asked that her mortgage be held for naught and canceled. When the trial came on no question was raised as to the execution of the Hoss note or that it had not been paid, but the contention was that by lapse of time it had ceased to be a legal obligation. On its face the note was barred, and Hoss undertook to remove the bar by averment and proof that Miller had made an acknowledgment in writing. She offered proof that on March 15, 1920, she found in her rural mail box a letter, and on opening it found it to be one written by A. B. Miller, in which it was stated that he had been in poor health, had had very little business, but now was getting some good business and that he would soon pay her $1,000 note. Her testimony was that it was in the handwriting of Miller and had been misplaced or lost, so that she was unable to produce it, and that the $1,000 note was the only note given by Miller to her. The envelope containing the letter she testified was addressed to her in Miller's handwriting. A demurrer to this evidence was sustained on the ground that Cerena Hoss was not competent to testify to the receipt of the letter and its contents, because it fell within the prohibition of Revised Statutes 60-2804.

The principal question presented on this appeal is whether or not Cerena Hoss was competent to testify as to the letter received by her, and that depends on whether the testimony violates the code provision reciting that a party may not testify on his own behalf concerning a communication or transaction had personally with a person since deceased. There is much contrariety of judicial opinion on the question, arising partly on the language of the several statutes and partly on whether the statutory prohibition should be given a

strict or liberal interpretation. Some of the statutes construed provide that all communications or transactions with a deceased person shall be excluded, while the prohibition in ours only excludes those had personally with the deceased. So far as the interpretation of the provision is concerned, this court has leaned to the view that a statute imposing such a restriction should be interpreted with reasonable strictness upon the theory that competency is the rule and disqualification is the exception, and a restricting disqualification should not be extended beyond the letter of the statute prescribing it. In *Williams v. Campbell*, 84 Kan. 46, 113 Pac. 800, it was said:

"Neither interest in the result of the litigation nor incompetency operates to disqualify a party except upon the specific condition named in the statute. The court is not inclined to extend this exception by interpretation. (*Bryan v. Palmer*, 83 Kan. 298; *Hess v. Hartwig*, 83 Kan. 592.) On the contrary, it has been said that 'the present judicial tendency is undoubtedly to give a liberal construction to statutes removing disqualifications to testify, and a strict construction to those imposing them—to endeavor to protect the rights of parties by requiring evidence from a doubtful source to be given only such weight as the circumstances may seem to justify, rather than by excluding it altogether.' " (p. 50.)

In *Sarbach v. Sarbach*, 86 Kan. 894, 896, 122 Pac. 1052, it was said, in speaking of the construction to be placed on the provision, "The modern tendency is to avoid increasing the restrictions of this statute beyond the literal necessities," and a great number of cases showing that tendency was cited. Upon such an interpretation, was the letter in question within the statutory restriction? It may be said that it was a communication or transaction; but was it personal in character as the statute provides? It was not written by Miller in the presence of the witness nor handed to her by him. When finished it passed from him to the possession of the post-office department, and it was obtained by the survivor Hoss from this intermediary. There was no personal touch between the parties when the letter was written or received. In limiting the disqualification to personal communications and transactions between one person and another, since dead, the legislative purpose evidently was that when one of the parties is silenced by death, the other shall be silenced by law, thus placing both sides on an equality. One of the tests of exclusion applied is, Could the deceased, if living, have denied the offered testimony? What occurred when the letter was received would have been outside of his knowledge and he could have given no testimony in contradiction of it. To be personal the communication

or transaction must have been made or had when the parties were face to face so that what was said or done in the presence of each other could not be related by one after the other had died. A case quite closely in point, so close that it seems to be controlling, has been determined by this court. In *Bryan v. Palmer*, 83 Kan. 298, 111 Pac. 443, an action was brought by an administrator of the estate of King, to recover on a note which defendant had given King. The defense was that the money had been inclosed in a letter in another state and forwarded by mail to King in his lifetime and a receipt was inclosed with it for King to sign. At the trial, after King's death, defendant testified as to the inclosing of the money in the envelope with the receipt, the taking of it to the post office and also the receipt acknowledging payment of the money. It was held that the testimony was not prohibited by the statute, since what was done and said by the defendant when he was hundreds of miles away could not be regarded as a personal communication or transaction. So here, Miller was not an immediate party to the transaction about which the testimony was given, had no personal knowledge of what was done by Hoss when she received and read the letter, and if living he could have given no evidence in contradiction of these facts. In a later case more closely in point it was held that an adversary might testify that he received certain letters from the decedent tending to show the existence of a contract. The letters, which were the only written memoranda of the contract, had been lost and secondary evidence of their contents was given by the witness. The letters were received in Alabama, postmarked in Kansas, and he testified that they were in the handwriting of the decedent. It was held that the testimony did not relate to a personal transaction; that the decedent, if living, could not have testified the letters were not received, or that in the opinion of the witness they were in his handwriting, and hence the testimony was held to be admissible. (*Dillon v. Gray*, 87 Kan. 129, 123 Pac. 878.)

In *Daniels, Exec., v. Foster*, 26 Wis. 686, it was held that a defendant might testify that he received a letter purporting to have been written by the testator, that it could not be regarded as a communication or transaction had personally with the deceased, and therefore did not come within the prohibition of the statute. It was held that a personal transaction or communication means one made face to face by parties in the actual presence and hearing of each other, and further that the witness could testify that he was familiar

with the handwriting of the deceased and that the letter was genuine. See, also, *Lee v. Downing,* 113 Kan. 329, 214 Pac. 786; *Sawyer v. Choate,* 92 Wis. 533; *Britt v. Hall,* 116 Ia. 564; *Minnis v. Abrams,* 105 Tenn. 662; *Josephs, Exec., v. Briant,* 115 Ark. 538.

We conclude that the evidence was admissible and was of such a character as required the submission of the same to the jury.

The judgment is reversed.