No. 35,777

In the Matter of the Estate of Ralph H. Badger, Deceased. CHARLES J. WALTMIRE, as Executor of the Last Will and Testament of Mary Jane Waltmire, Deceased, *Appellee*, v. HATTIE I. BADGER, as Executrix of the Last Will and Testament of Ralph H. Badger, Deceased, *Appellant*.

(137 P. 2d 198)

Opinion filed May 8, 1943.

*Alex Hotchkiss,* of Lyndon, argued the cause for the appellant.

*Harry T. Coffman,* of Lyndon, argued the cause for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a petition for allowance and classification of demand originally filed in the probate court. Judgment in the probate court and on appeal to the district court was for the petitioner. The defendant appeals.

It will be noted from the title of the case that the action is by the executor of one will against the executrix of another. The petition alleged that on January 17, 1933, one Badger gave his note for $600 to Mary Jane Waltmire, who was deceased at the time the

petition was filed—hence, the petition was filed by the executor of her last will. The petition then alleged that no part of the obligation evidenced by the note had been paid except one dollar, which was paid by Badger for credit upon the note on January 10, 1939, and that there was due and owing on the note by the estate of Badger the sum of $600, with interest, less the credit of one dollar. The note was attached to the petition. It appears by its terms that on January 17, 1933, Badger agreed to pay Mrs. Waltmire $600 one year after the date of the note or on January 17, 1934. It will be noted that under the five-year statute of limitations an action would be barred by the statute January 17, 1939, unless for some reason the statute should be tolled. This action was brought October 23, 1941, more than five years after the note became due. The executrix of the last will of Badger and certain legatees named in that will filed a written defense to the petition, in which they denied all the allegations of the petition. It will be noted that the petition alleged the payment of one dollar on January 10, 1939; and that this was seven days before the five-year statute would have run against the collection of the note. When the case came on to be heard the issues were submitted to the trial court without a jury. The note was introduced in evidence. No question is raised about the signature on the note being that of Badger.

Over objection of defendant evidence was introduced that the note bore the notation on the back "January 10, 1939, received payment of one dollar on this note." The executor of the will of Mary Jane Waltmire was permitted to testify over the objection of defendant that he put that notation on the note at the time that Mr. Badger was with him and that he had one dollar more when Mr. Badger went away than he had when he first talked to him. This witness also testified that he conducted his mother's business relative to the Badger note and his mother would have him go every once in a while and try to collect it. The evidence also disclosed that plaintiff was the executor of the will of Mary Jane Waltmire; that he was a beneficiary, as testamentary trustee under her will for his sister to one-half the property after a specific bequest to himself, and was also beneficiary individually of the remaining one half. After some further evidence, with which we are not concerned, the defendant demurred on the ground that the evidence failed to prove a cause of action in favor of the plaintiff and against the defendant. The court overruled this demurrer and gave judgment for the plaintiff. The defendant has appealed.

The first matter to which we shall give our attention has to do with an argument of plaintiff that the question of the statute of limitations is not in this case for the reason that it is an affirmative defense and was not specially pleaded as a defense in the answer. There was some colloquy about this at the close of the introduction of evidence and counsel for defendant asked permission to amend the answer so as to state that the action was barred by the statute of limitations. This request does not appear to have been ruled on by the trial court. The answer, as has been noted, was a verified general denial. The effect of this was to deny the payment alleged. The authorities cited and relied on here by the plaintiff are to the general effect that by not pleading the statute the defendant had waived it. It must be remembered that defendant in this case is the executrix of a will. This action was begun in the probate court by a petition for allowance and classification of the demand. This was substantially the procedure considered in *Hammond v. Estate of Hammond,* 150 Kan. 113, 91 P. 2d 19. In that case the executor of the estate had demurred to the claim on the ground that it was barred by the statute. The plaintiff argued that by his failure to plead the statute the executor of the estate had waived it. This court said:

"The claim was filed in the probate court. Under the statutes with reference to the exhibition and establishment of claims against estates of decedents the claimant must file his claim under oath. The statute reads:

" 'The affidavit in this section shall not be received as evidence of the demand, *but the same shall be established by competent testimony before it is allowed or adjusted.'* (G. S. 1935, 22-709, italics inserted.)

"The probate code prevents a default judgment on a claim, and there is no provision for any answer or other pleading by an executor or administrator. If, in the proof of the claim, it develops it is barred, it is the duty of the probate court to disallow the claim—the executor has no power to waive it. (See *Hanson v. Towle, Adm'r,* 19 Kan. 273, 282; *Bristow v. First Trust Co.,* 140 Kan. 711, 721, 38 P. 2d 108.) And on appeal to the district court the same situation would obtain. The fact the answer of the executor to the bill of particulars filed in the district court did not plead the statute of limitations does not alter the situation. The executor was without power to waive it, whether by inadvertence or by intention." (p. 115.)

Following the rule announced in that case we hold that the question of whether the note in this case was barred by the statute of limitations was properly before the court.

The defendant argues that the court erred in overruling its demurrer to the evidence of the plaintiff.

In this connection it should be noted that the demurrer of defendant to the evidence of plaintiff was overruled on April 23, 1942. An appeal may be taken from such an order. See G. S. 1935, 60-3302, also *Israel v. Lawrence*, 126 Kan. 586, 270 Pac. 602. The appeal was taken August 13, 1942. The time within which appeals must be taken is provided in G. S. 1941 Supp. 60-3309. It reads as follows:

"The appeal shall be perfected within two months from the date of the judgment or order from which the appeal is taken: *Provided*, That appeals from judgments and appealable orders of a date within four months immediately prior to the taking effect of this act may be perfected within two months after the effective date of this act."

It will be noted that more than two months had elapsed after the demurrer to the evidence was overruled before the appeal was taken. In *Security Finance Co. v. Hoyt*, 143 Kan. 11, 53 P. 2d 802, the demurrer to the evidence was overruled on November 24, 1933, and the appeal was perfected June 28, 1934. A motion for a new trial was filed and overruled before the appeal was perfected. At that time G. S. 1935, 60-3309, was in effect and under its terms the time for appeal was six months. On appeal this court held that since the appeal was taken more than six months after the overruling of the demurrer to the evidence it was taken too late to obtain an examination of the correctness of that ruling even though it was taken within the time allowed after the overruling of a motion for a new trial. See, also, *Norman v. Railway Co.*, 101 Kan. 678, 168 Pac. 830, and *Greiner v. Greiner*, 130 Kan. 333, 286 Pac. 219.

G. S. 1935, 60-3309, was amended by the adoption of G. S. 1941 Supp. 60-3309, same being section 2 of chapter 268 of the Laws of 1937. The effect of that section was to shorten the time in which an appeal should be taken from six months to two months. The rule announced in *Security Finance Co. v. Hoyt*, supra, applies with equal force as an interpretation of the statute that is in force at the present time. Hence the appeal from the order overruling the demurrer to the evidence was taken too late. This prevents us from considering that question.

G. S. 1941 Supp. 60-3314a provides that when a party appeals from a final judgment against him the fact that some ruling of which he complains was made more than two months after he perfected the appeal shall not prevent a review of the ruling. If there was an

appeal in time from the judgment then the above statute would permit us to examine the ruling of the court on the demurrer to the evidence. See *First Federal Saving & Loan Ass'n v. Thurston*, 148 Kan. 88, 80 P. 2d 7, and *Drenning v. City of Topeka*, 148 Kan. 366, 81 P. 2d 220. This sends us to a further examination of the record. It appears that the judgment was entered on May 26, 1942, while the appeal was taken August 13, 1942. Hence the appeal was not taken from the judgment in time and the statute just referred to does not enable us to examine the question of the demurrer to the evidence.

Within the statutory time from the entering of the judgment the defendant filed a motion for a new trial. This motion was made upon the following grounds: (1) Erroneous rulings of the court; (2) erroneous ruling overruling respondent, defendant's demurrer to petitioner, plaintiff's evidence; and (3) the judgment is contrary to the evidence. In the journal entry, which is before this court, there is a document marked exhibit A. It appears that this document was treated as a part of the motion for a new trial. It set out additional grounds for a new trial. They will be noted later in this opinion.

In such a case, where the appeal is not taken in time from the judgment or from the order overruling the demurrer to the evidence, but is taken in time from the order overruling the motion for a new trial, the questions raised are limited to those raised and considered by the court in overruling the motion for a new trial. See *Phillipson v. Watson*, 149 Kan. 395, 87 P. 2d 567. There this court said:

"Where the motion for a new trial is on the ground that the judgment rendered was contrary to the evidence, and that the court had admitted improper evidence, the appeal taken within time after the ruling upon the motion for a new trial raises those questions, and they may be reviewed with whatever effect the review may have upon the questions of law involved in the judgment of the court." (p. 401.)

This sends us to a consideration of the motion for a new trial. The second ground of that motion is that the court erred in overruling defendant's demurrer to the plaintiff's evidence. We cannot review that order while considering the question of whether a motion for a new trial should have been overruled, because under this record that would be considering the correctness of such an order where no appeal had been taken from it in time. See *Miller v. Sunflower Recreation Society*, 151 Kan. 930, 101 P. 2d 891, also *Gas Service Co. v. Consolidated Gas Utilities Corp.*, 150 Kan. 715, 96

P. 2d 608. The time within which an appeal may be taken from an order overruling a demurrer to the evidence cannot be extended by making such action one of the grounds for a new trial.

The third ground of the motion for a new trial was that the judgment was contrary to the evidence. This ground will be considered presently. This takes us to a consideration of the grounds for a new trial set out in the document which has been referred to as exhibit A. Apparently this was treated as a part of the motion for a new trial and it was the intention that it should take the place of paragraph 1 of the motion. Paragraph 1 of exhibit A sets out as an erroneous ruling—

"Admitting in evidence inventory in the estate of Mary J. Waltmire deceased insofar as it showed the note in this action."

Paragraph 3 sets out as an erroneous ruling—

"Admitting in evidence testimony of witness Charles J. Waltmire in response to question, 'Did you have any more money when you went away than you did when you first saw him?' answered by witness, 'Just got that $1.00 bill he handed me.' "

There was some colloquy between the court and counsel when testimony as to these two matters was offered. The court stated that the evidence would be admitted for the present. When the trial court announced its decision overruling the motion for a new trial it stated that the evidence to which reference was made in paragraphs 1 and 3 had not been considered by it. The trial court noted this in the journal entry to overcome the presumtion pursuant to rule 53 of this court that the evidence was considered.

Since evidence as to these two particular matters was not considered by the trial court we shall not consider the ruling on them as grounds for a new trial. Ground 2 of exhibit A was as follows—

"Admitting in evidence testimony of witness Charles J. Waltmire relating to making of endorsement on note that endorsement on the back of the note was his writing, that as near as he could tell the date was just what the note says on there, that it would be impossible for him to remember dates that long, that at the time he wrote it on there he knew it was the correct date, that it is the correct date, that if he saw Mr. Badger there or at the time he saw him there he made the endorsement in his presence."

Mr. Waltmire did testify among other things to substantially that. Defendant objected to it and argues here that the trial court erred in admitting it because Waltmire was incompetent to testify to it on account of G. S. 1935, 60-2804. That section provides in part as follows:

"No person shall be allowed to testify in his own behalf in respect to any transaction . . . had personally by such party with a deceased person, . . . or when the adverse party is the executor, . . . of such deceased person. . . ."

In this action the matters about which complaint is made as to the admission of testimony occurred between the person who testified and the deceased person of whose will defendant is testatrix. There can be no doubt about that. The only question is whether the matters testified about were transactions within the meaning of the above statute. The purpose of the statute is clear. It was intended to meet a situation where two parties had dealt with each other, then the lips of one were sealed by death, and a controversy arose concerning the dealings. The lawmakers declared that the person still living should not have the advantage of being able to testify about the dealing between himself and the dead man, since the only person who could have contradicted him could not be heard. That is just the situation we have here. It would be manifestly unfair to permit plaintiff to testify to matters occurring between himself and Badger, from which circumstances a conclusion could be drawn that the deceased man had done certain things or known certain things or had intended certain things which would have amounted to a payment. Such a conclusion would defeat the very purpose of the statute.

In *Clifton v. Meuser*, 79 Kan. 655, 100 Pac. 645, this court said:

"The solution of the question depends upon the meaning of the word 'transaction' as used in this statute. However it may be defined in other connections, here it clearly means an action participated in by the witness and the decedent. A plaintiff in an action against an administrator may ordinarily testify to his own conduct. But whenever his conduct is of such a character that in describing what he did himself he necessarily attributes to the decedent some act or attitude with respect thereto the incident which is the subject of the testimony is shown to relate to a transaction participated in by the two parties, which must be shown, if at all, by other witnesses." (p. 660.)

See, also, *Lee v. Downing*, 113 Kan. 329, 214 Pac. 786, where the court said:

"It was not improper to admit testimony that certain work was done and that certain material was furnished and used in the construction of the building which did not involve personal transactions or communications with the deceased. If the evidence given had shown that the work was done in the presence of the deceased and with her personal participation, there would have been grounds for the objection made." (p. 330.)

See, also, *Moore v. Miller*, 119 Kan. 666, 240 Pac. 853; *Brock v.*

*Corbin,* 94 Kan. 542, 146 Pac. 1150; *Rich v. Bowker,* 25 Kan. 7; and *Bryant v. Stain-Brook,* 40 Kan. 356, 19 Pac. 917.

It is unnecessary to cite authorities in support of the proposition that this testimony constituted a transaction and communication with the deceased. The witness was incompetent to testify concerning it and his testimony could not prove the purported payment. In the Brock case, *supra,* we said:

"Upon its face the note appeared to be barred by the statute of limitations. To overcome the defense that the debt was barred Brock offered to testify that payments of interest had been made by Corbin to himself within the period of limitation and also that the payments had been endorsed by himself on the note. As the offered testimony related to transactions Brock had personally with the deceased in a case where the adverse party is administratrix of the estate it was properly excluded under section 320 of the civil code (Laws 1911, ch. 229, § 1). No other testimony being offered, the demurrer of the defendant to the evidence of the plaintiff was necessarily sustained."

G. S. 1935, 60-2804, which renders a person incompetent to testify in his own behalf concerning transactions or communications with a deceased person, does not make such person a competent witness, or his testimony of payment competent, merely because he has reduced the evidence of such communications to writing in the form of a credit endorsement. The statute makes no such exception, and manifestly, if courts arbitrarily read such an exception into the statute, they will devise an easy method of circumventing the beneficent intent and purpose of a law designed to prevent injustice to those who, by reason of death, are no longer able to protect themselves. We hold, therefore, that this evidence should not have been admitted.

This brings us to a consideration of the fourth paragraph of exhibit A. That paragraph sets out that the court erred in admitting in evidence the notation on the back of the note.

It must be remembered that the question of fact which the court had to decide was whether the payment alleged to have been made in the claim actually was made on the date alleged. Unless the writing on the back of the note was evidence of this then it was error to admit it. Plaintiff takes the position that an entry of credit made before the statute has run is admissible as evidence of part payment. In support of his argument that this notation of payment was put on the note on the date noted, that is, seven days before the action was barred by the statute, plaintiff relies on G. S. 1935, 52-211. That statute reads as follows:

"Where the instrument or an acceptance on any endorsement thereon is dated, such date is deemed prima facie to be the true date of the making, drawing, acceptance, or endorsement as the case may be."

Plaintiff points out that the notation on the back of the note in this case bore a date seven days before the action was barred and argues that pursuant to the statute there was a presumption that the notation was put there on that date. Plaintiff argues that the writing on the back of this note is an endorsement as the word is used in G. S. 1935, 52-211. We cannot agree with that position. The word "endorsement" as used in G. S. 1935, 52-211, has a well defined technical meaning in the negotiable instruments law. In G. S. 1935, 52-102, the terms used in the act are defined. That section provides in part—

"Endorsement means an endorsement completed by delivery."

The notation of payment on the back of this note had nothing to do with any transfer of it. It was not an endorsement within the meaning of G. S. 1935, 52-211. Hence there is no presumption that this notation of payment was put on that note on the date it bears.

The fact that must be proven in order to toll the statute is that payment was made on the note by the maker before the statute had run. Is the fact that the note bears a notation that a payment was made on a certain day competent evidence that the payment was actually made on that day?

The underlying reason that the statute provides that part payment of an obligation tolls the statute is that the maker of a note or any other debtor would not make a payment on an obligation unless he actually owed the obligation. It is really only a form of acknowledgment of the debt. In *Good v. Ehrlich*, 67 Kan. 94, 72 Pac: 545, this court considered the question of whether an endorsement on a note by itself was sufficient proof of payment to require the trial court to submit the question of payment to the jury. This court said:

"It is well recognized in the books that such payment must be made by the obligor, against whom the statute is sought to be tolled, or by some one at his direction, and made as a part payment of the debt under such circumstances as to amount to an acknowledgment of an existing liability. At common law, and in the absence of a statute, a part payment was held to toll the statute, upon the principle that it was an acknowledgment of an existing liability at the time the payment was made." (p. 96.)

It will be noted that this court considered the logical conclusions to be drawn from the notation in view of the theory upon which

the provision that the statute may be tolled by payment is based. The fact that the notation appears on the note even though it might be considered that it was evidence that a payment had been made is no evidence whatever that it was made by the maker of the note or to the holder of the note with the intention on the part of the maker that it be applied on the note.

In *Shanks v. Louthan,* 79 Kan. 363, 99 Pac. 613, the holder of a note secured by a mortgage on real estate collected rents from the real estate in question, applied part of the proceeds for paying taxes and for repairs, and with the knowledge of the mortgagors credited the balance upon the note. The action on the note was brought after it would have been barred by the statute except for these payments. This court said:

"The only question is whether the act of the mortgagee in possession in crediting upon the note the net rentals for the mortgaged premises, with the knowledge of the mortgagors, removed the bar of the statute of limitations. . . . The payment to avoid the bar of the statute must be made under such circumstances as to amount to an acknowledgment of an existing liability. The mere knowledge that the proceeds of the rental after paying taxes and repairs were applied on the note was insufficient." (pp. 364, 365.)

In *Pessemier v. Zeller,* 144 Kan. 726, 62 P. 2d 882, a bank was the holder of a note when it became insolvent. The maker of the note had a small deposit in the bank at the time it closed. This amount was endorsed on the note as a payment. A third party bought the note and brought an action to collect it. The pleadings disclosed that this deposit had been credited on the note by the receiver of the bank. Unless this crediting had the effect of a payment the action was barred. This court said:

"Was the application of the credit by the receiver a payment by defendant? We know of no statute or decision, and none is cited by plaintiff, to the effect that a receiver of an insolvent bank is the authorized agent of a depositor for the purpose of acknowledging a depositor's existing liability on a note of the bank. Were this the law then a creditor could apply a credit and thereby make a promise to himself that the debtor would pay the new obligation. The reason payment tolls the statute is that payment is an acknowledgment of an existing debt and an implied promise to pay the remainder." (p. 728.)

This opinion contains a comprehensive review of the authorities on this question.

The plaintiff in this case calls to our attention a line of authorities to the effect that where an endorsement of payment was made before the statute had run it was a declaration against interest which a creditor would not make unless the payment had actually been

made, hence an endorsement made before the statute had run was evidence by itself that the payment had been made. We are not impressed with that theory here, especially in view of the fact that the payment claimed to have been made was one dollar on a claim that with interest would amount to about one thousand dollars.

What has been said in *Roberts v. Davis, Admr.*, 66 Ohio App. 527, 35 N. E. 2d 609, is of interest on this point. In that case the court considered the question with which we are confronted here and said:

"We recognize that there exists a line of respectable authorities which hold that endorsement is evidence of payment upon the theory that such notations made before the obligation is barred by lapse of time are declarations against interest which a creditor would not make when he then had a right and opportunity to collect his debt. To our notion this reasoning fails to recognize the possible human urge of one to protect his interests. One might be more than willing to lose a small portion of his claim rather than to lose it all. If such an endorsement was made after the statutory bar had set, it is the perpetration of a fraud. If made prior thereto, without actual payment, it is equally fraudulent. Many things might actuate one to forego collection of his debt within the period allowed by law, an example of which might be found where one's mother was a joint obligor. This rule encourages fraudulent practices." (p. 530.)

See, also, *Miller v. Dawson & Conger*, 26 Ia. 186; also *Cannavian v. Poston*, (1942) 13 Wash. 2d 182, 124 P. 2d 787; also *Knight, Adm'r, v. Clements et al.*, Ex'rs, 45 Ala. 89, 6 Am. Rep. 693. In the latter case the court said:

"In an action against one of the several joint makers of a promissory note, who pleads the statute of limitations, and the plaintiff seeks to avoid the bar of the statute by a payment endorsed on the note before the bar was complete, he must prove affirmatively—the burden is upon him—that the payment was made by the defendant before the cause of action was barred." (Syl. ¶ 1.)

The annotation in 59 A. L. R. 903 relied upon the appellee, as we interpret it, does not purport to deal with the question of incompetency of witnesses or with the incompetency of evidence concerning payments alleged to have been made by a deceased person. In the annotation the author states:

"There is a conflict of authorities on the question of whether an endorsement or entry of a credit, made by the creditor before the indebtedness is barred by the Statute of Limitations, is sufficient prima facie evidence of a part payment to toll the statute. . . In order to be sufficient for this purpose, however, such entry or endorsement must be affirmatively shown, by evidence aliunde, to have been made before the indebtedness would have been barred by the statute." (pp. 914, 915.)

To the same effect see 34 Am. Jur., Limitation of Actions, pp. 270, 271, § 347.

What evidence in addition to the endorsement itself was there in the instant case to show the endorsement of payment was made before the debt was barred? It was the incompetent evidence of plaintiff previously related.

This brings us to the third ground of the motion for a new trial—that the judgment was contrary to the evidence. As we have demonstrated, the evidence as to the transaction between Waltmire and Badger was incompetent. Admission of the notation of the payment was error. Hence there was no competent evidence whatever that there was an actual payment on this note. For these reasons the motion for a new trial should have been sustained.

The judgment of the trial court is reversed with directions to grant defendant a new trial in accordance with the views expressed herein.

THIELE, J., concurs in the result.

HARVEY, J., dissents from paragraph 6 of the syllabus and corresponding portion of the opinion.