No. 36,745

In the Matter of the Estate of J. E. HILL, Deceased (MAY HILL CLUTTER, Executrix, *Appellant*, v. DELTA MOSS HILL, *Appellee*).

(176 P. 2d 515)

Opinion filed January 25, 1947.

*Fred Hinkle,* of Wichita, argued the cause, and was on the briefs for the appellant.

*William N. Tice,* of Beloit, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from a judgment rendered in a proceeding to construe a will.

Prior to June 9, 1934, one J. E. Hill, whose will is under consideration, was the owner of a certain tract of real estate in Wichita, Kan., the legal description of which is not of present importance. The post-office address of the real property was 1824 Ida avenue. On that date he and one Delta Moss, in contemplation of their marriage, entered into a written contract reciting their proposed marriage, and that each had children by former marriages who helped earn what property each possessed and that they should have an understanding as to its disposal, and agreeing that if she should die first he would make no claim to her property, and in case of his death she would make no claim to any part of his estate

"except the property at 1824 Ida avenue, which shall be hers to hold and to use as long as she shall live, together with its furnishings, and at her death it shall pass to the lawful heirs of J. E. Hill." Thereafter, on June 10, 1934, J. E. Hill, then 74 years of age, and Delta Moss, then 70 years of age, were married, and they lived together until the death of J. E. Hill on October 13, 1944. On August 18, 1937, J. E. Hill made his last will and testament. We need not set out formal provisions, provisions for payment of debts and funeral expenses, or the designation of residuary legatees, as the only part in question is the third numbered paragraph, which recites:

"Third: I have made no provision herein for my present wife, Delta Moss Hill, for the reason that the said Mrs. Hill and myself were married to each other rather late in life, both of us having children of our own by former marriages, and we having mutually agreed to and with each other that each of us should have the right and privilege of giving to our respective children such property as we, or either of us, might own at the time of our death; however, it is my will and desire that my said wife, Delta Moss Hill, should she survive me, shall have the right and privilege of occupying the premises where we now live, commonly known as No. 1824 Ida Avenue, together with the furniture contained therein, for and during the period of her remaining life time, and at her death, be divided between my children as herein set forth and provided."

Attached to and a part of the document was a consent of Delta Moss Hill which stated she had read the will and understood it, the share she was entitled to take on testator's death, and that she accepted it and agreed to abide, and "do hereby waive, release and relinquish any and all claims, rights, interests or estates which I may otherwise have in the property of my said husband at his death." Both the will and consent were executed as required by statute. Later and on August 24, 1937, J. E. Hill made a codicil to his will, but it did not affect the provision for Delta Moss Hill. On July 6, 1942, J. E. Hill and Delta M. Hill, husband and wife, for a stated consideration of $1 and other considerations, conveyed the above real estate by its proper legal description to one Evans. The net amount received by the grantors was $3,700, which was invested in United States government bonds, which were on hand at the death of Hill. The furniture was sold for $288. For a short time after the property was disposed of Mr. and Mrs. Hill lived with his daughter in Wichita, and they then moved to Beloit, Kan. When they first came to Beloit, Mr. Hill looked at a number of houses with a view of purchasing a home but no purchase was

made, and they rented an apartment which they occupied until the death of Mr. Hill on October 13, 1944. The sale of the property in Wichita and the removal to Beloit was so that Mrs. Hill could be near her children and both Mr. and Mrs. Hill consented to their removal to Beloit.

Shortly after the death of J. E. Hill proceedings were commenced in the probate court and on November 10, 1944, his will was admitted to probate, and May Hill Clutter was appointed as executrix and duly qualified. The administration of the estate proceeded. In September, 1945, the executrix filed her petition in the probate court, setting out her appointment and qualification and that she had possession of the assets of the estate. She directed attention to the third paragraph of the will, and that after execution of the will J. E. Hill and Delta Moss Hill had conveyed the real estate described to Evans; that the furniture had been sold; that the deceased J. E. Hill at the time of his death owned neither the real estate nor the furniture; that no other real property of any kind nor other furniture had been purchased; that as executrix she was prepared to conclude administration of the estate and to make distribution of the estate to the legatees and devisees named in the will; that she could not distribute and deliver the property at 1824 Ida Avenue or the furniture therein because, for reasons stated, she never possessed the same as executrix; that the acts and deeds of J. E. Hill and Delta Moss Hill in conveying the real estate and selling the furniture constituted an ademption and relieved the executrix from making any distribution to Delta Moss Hill; and that Delta Moss Hill while recognizing that the executrix could not deliver the real estate and furniture, contended that there should be paid to her from the estate of J. E. Hill financial compensation as near as may be, equal in value to the bequest made under the quoted paragraph of the will. Under her prayer the executrix asked that the acts of J. E. Hill and Delta Moss Hill in conveying the real estate and selling the furniture be declared to be an ademption and that she be relieved from paying to Delta Moss Hill any financial compensation or other benefit in lieu and instead. Under appropriate proceedings the matter was certified for trial to the district court, where most of the facts were stipulated. Some testimony was received, but as to it there was no important dispute.

The district court made findings of fact embodying the matters heretofore detailed and that it was the intention of J. E. Hill, at the

time the antenuptial contract was executed, and at the time he executed his will, and at the time of the sale of the Wichita property, to provide a home for Delta Moss Hill as long as she should live. Such other findings of fact as are necessary will be mentioned later. The district court concluded as a matter of law the antenuptial contract was binding upon J. E. Hill during his lifetime and was a valid and existing obligation against the executrix of his estate, and that the executrix should pay Delta Moss Hill, from the assets of the estate, the sum of $250 per year until the death of Delta Moss Hill, and judgment was rendered accordingly. The motions of the executrix for a new trial and for a judgment in her favor were denied and she perfected her appeal to this court.

We here note that Delta Moss Hill filed no answer in either the probate or the district court. Neither the record as abstracted, nor the stipulation, disclose that she ever filed in the probate court any claim to any part of the estate, based on any right under the antenuptial contract, nor in the stipulations of fact made to the district court was there any reference to any such claim ever having been made.

We also note that it is conceded that J. E. Hill and Delta Moss Hill, at the time of the death of J. E. Hill, owned no real estate which was their homestead, and that no contention is made that under G. S. 1945 Supp. 59-404, Delta Moss Hill was entitled to a widow's allowance notwithstanding her consent to the terms of the will of J. E. Hill.

In the briefs filed in this court neither party has placed any reliance on the fact the district court made no specific finding either of fact or of law with reference to the question of ademption, nor does either make any clear segregation in argument concerning the provisions of the antenuptial contract and the legacy under the will. The general questions included in the arguments in the briefs are whether there was an ademption, whether Delta Moss Hill is estopped, in view of her joining in the deed and consenting to the sale of the furniture, to now make any claim, and whether the antenuptial contract is enforceable.

We first take note of the arguments presented by appellee in support of the judgment of the trial court. Summarized, the argument runs that the question for decision is whether J. E. Hill, by the antenuptial contract and his will intended to provide a home for Delta Moss Hill as long as she lived, and that such intent is determined

not from an isolated provision of his will (*Shannep v. Strong,* 160 Kan. 206, 160 P. 2d 683), but must be reached from the will as a whole (*Morse v. Henlon,* 97 Kan. 399, 155 Pac. 800); that where there is a proved definite contract to leave property by will, and performance by the promisee, equity will grant relief (*Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743, 9 L. R. A. n. s., 229; *Braden v. Neal,* 132 Kan. 387, 295 Pac. 678; *Dent v. Morton,* 148 Kan. 97, 79 P. 2d 875); that intent governs and must be ascertained from the will as a whole, giving its provisions such construction, if possible, as will effectuate rather than defeat the testator's intention (*Selzer v. Selzer,* 146 Kan. 273, 69 P. 2d 708). The argument is that it clearly appears from the antenuptial contract and the will that J. E. Hill intended to give to Delta Moss Hill a home as long as she lived, and that her consent to the will was qualified by those provisions for her benefit, and when she joined in conveying the real property at 1824 Ida avenue, it did not result in any ademption. No authorities are cited in support of the last contention. Delta Moss Hill also presents some argument with respect to whether, by joining in the deed, she became estopped, and it is argued that J. E. Hill never intended to cheat or defraud his wife, but that he fully intended she should have a home as long as she should live; that a person claiming an estoppel must have been prejudiced; that one cannot be estopped from claiming property by acts which have neither injured nor prejudiced the one asserting the estoppel (*Jacquart v. Jennings,* 118 Kan. 224, 235 Pac. 101, and cases cited therein); that if the appellant cannot produce the described real estate, she can provide the necessary money so that Delta Moss Hill may provide herself with a home; that the doctrine of equitable estoppel should be interposed with caution and a necessary element is that the party invoking it has changed his position to his detriment in reliance upon the acts or the promises of the party sought to be estopped (*Riffel v. Dieter,* 159 Kan. 628, 157 P. 2d 831; *Broadview Oil Co. v. Livengood,* 156 Kan. 514, 134 P. 2d 378); that it cannot be said the appellant has so suffered; and that for the appellant to prevail is not equitable to Delta Moss Hill.

Appellant's argument in support of her contention the district court erred is premised on the proposition that the court could not stress the antenuptial contract and ignore the will and that in construing the will the testator's intention must be ascertained from all of its provisions and from the circumstances surrounding its execu-

tion (*Shannep v. Strong,* supra); that the contract and will dealt with specific real estate; that the legacy to Delta Moss Hill was consented to when the will of J. E. Hill was made; that the legacy to her was adeemed and the antenuptial contract came to an end by the joint act of J. E. Hill and Delta Moss Hill in conveying the real estate and disposing of the furniture; and that under the circumstances Delta Moss Hill is now estopped from enforcing the terms of the antenuptial contract in the manner adjudged by the court.

In discussing the questions arising in this appeal and as presented in the briefs, we shall take up first the matter of the antenuptial contract.

It has been repeatedly held in this state that parties contemplating marriage may contract with each other concerning their property rights; that such contracts, fairly, equitably and intelligently made, will be upheld; and that they will be liberally interpreted to carry out the intentions of the parties to them. (See, e. g., *In re Estate of Garden,* 158 Kan. 554, 148 P. 2d 745; *In re Estate of Cantrell,* 154 Kan. 546, 119 P. 2d 483; *Dunsworth v. Dunsworth,* 148 Kan. 347, 81 P. 2d 9; *Hafer v. Hafer,* 33 Kan. 449, 6 Pac. 537; and cases cited.) There is no contention that the contract presently involved was not fairly and intelligently made and equitable in its terms. The rules governing the construction of contracts generally are applicable to the construction of antenuptial contracts (41 C. J. S. 574) and a marriage settlement, in the absence of a statute to the contrary, may be revoked by mutual consent of the parties, although the revocation must be clearly expressed (41 C. J. S. 583). While much could be written as to rules of construction of contracts generally, it has been held in this state that a primary rule of construction is that, if possible, the court must ascertain and give effect to the mutual intention of the parties as of the time the contract was made, unless in contravention of legal principles, statutes or public policy (see *Berg v. Scully,* 120 Kan. 637, 245 Pac. 119), and further that the intention of the parties to and the meaning of a contract are to be deduced from the language of the contract where its terms are plain and unambiguous, and when the language is clear and unequivocal the meaning must be determined by its contents alone, and words cannot be read into a contract which import an intent wholly unexpressed when the contract was executed (*Wood v. Ozark P. L. Co.,* 142 Kan. 333, 46 P. 2d 614). Before applying these rules to the instant

contract, it may be observed that the record as abstracted discloses no evidence whatever, even if it were competent, that after the Wichita property was sold there was any agreement the proceeds were to be reinvested in any homestead or otherwise held in lieu of the Wichita property. The language of the antenuptial contract is clear and unambiguous and in determining the intention of the parties to it, we consider the situation as of the date the contract was made, that is, June 9, 1934. Giving the language used a liberal interpretation, it is apparent that the parties intended that so long as Delta Moss Hill lived after the death of J. E. Hill, she was to have the right to hold and to use the described property. The contract contains no language even hinting that if the parties mutually agreed to dispose of that property that Delta Moss Hill had any interest in the proceeds arising from the sale or in any property in which those proceeds might be invested. When Delta Moss Hill joined in the sale and disposal of the property which was the subject matter of the contract, it left a situation where there was nothing left on which the contract could operate. The effect of the district court's ruling was to make for the parties to the antenuptial contract an agreement they did not make for themselves.

Although not mentioned in the briefs, there is a matter implicit in the judgment of the district court which we think should be mentioned and decided. As has been stated, the district court's judgment was grounded solely on the binding force of the antenuptial contract. If that judgment is carried out Delta Moss Hill will receive an amount out of the assets of the estate which was not bequeathed to her, and thus the amount to be received by the residuary legatees will be reduced. Under our decisions, whatever rights Delta Moss Hill had under the antenuptial contract, as interpreted by the district court, constituted a demand against the estate of J. E. Hill. (See, e. g., In re Estate of Grindrod, 158 Kan. 345, syl. ¶ 5, 148 P. 2d 278; Ganatz v. Bondurant, 159 Kan. 389, 155 P. 2d 450; and In re Estate of Bourke, 159 Kan. 553, 156 P. 2d 501.) Under the provisions of G. S. 1945, 59-2239, it was necessary, if Delta Moss Hill had a demand against the estate of J. E. Hill, that she make claim thereon within the time provided by that statute. Delta Moss Hill did not file any claim in the time fixed. Under such circumstance, the executor was without power to waive the statute of limitations or nonclaim (Allen v. Turner, 152 Kan.

590, syl. ¶ 2, 106 P. 2d 715; *In re Estate of Badger*, 156 Kan. 734, syl. ¶ 1, 137 P. 2d 198) and if, in an attempt to prove such a claim, is developed it was barred, it was the duty of the court to disallow it. (*Hammond v. Estate of Hammond*, 150 Kan. 113, 91 P. 2d 19.) It follows that Delta Moss Hill, not having filed her claim in the probate court, may not recover from her husband's estate on account of their antenuptial contract.

However, as has been noted, the appellee relies not alone upon the antenuptial contract but upon the will, and therefore we take up consideration of the will, and whether there was an ademption of the legacy given to her. It is not necessary that we treat at any length the rules to be applied in construing the will of J. E. Hill for it is well settled that one clause or phrase is not to be isolated from its context, but the intention of the testator is to be reached from the will as a whole and from the circumstances attending its execution if needed to clarify his intent. We need not, in construing the will, pay attention to the antenuptial contract, which in effect the testator recognized. The provisions of paragraph three of the will, quoted above, and the contract are in substantial accord. Neither need we elaborate on the proposition that the legacy to Delta Moss Hill, although not in fee simple, did give to her a specific legacy made up of the devise as to 1824 Ida avenue, and of the bequest of the furniture contained therein.

What was the effect of the conveyance of the real estate by J. E. Hill and Delta Moss Hill, and of the disposal of the furniture? We do not ignore appellee's contention that Mrs. Hill's testimony may have been that she did not know the property was to be sold before the sale was made, but that testimony was objected to as being part of a transaction with a person since deceased. The findings of the district court contain nothing that Mr. Hill overreached Mrs. Hill in any particular. However that might be, the undisputed fact is that the real estate was conveyed and the furniture was sold during the lifetime of J. E. Hill and were not a part of his estate at his death and were never any part of his estate reaching his executrix. Ademption is the term used to describe the act by which a specific legacy has become inoperative by the withdrawal or disappearance of the subject matter from the testator's estate in his lifetime, and where the testator sells or disposes of real or personal property which is the subject matter of a specific legacy, the sale or disposal, without more, results in an ademption and the legatee takes nothing

of it under the will. See 69 C. J. 998, 1007. The following cases recognize the rule and its effect: *Kirkpatrick v. Kirkpatrick,* 112 Kan. 314, 211 Pac. 146; *Willoughby v. Watson,* 114 Kan. 82, 216 Pac. 1095; *Taylor v. Hull,* 121 Kan. 102, 245 Pac. 1026; *Warren v. Phebus,* 132 Kan. 816, 297 Pac. 657; *Myers v. Noble,* 141 Kan. 432, 41 P. 2d 1021; and other cases to the same effect might be cited. Most of the above cases are also authority for the proposition that the legacy now under consideration is a specific and not a general one. Under the above rules, when J. E. Hill and Delta Moss Hill disposed of the property which is the subject matter of paragraph three of his will, there was an ademption and Delta Moss Hill took no part of such property under the will.

Appellee makes some contention that J. E. Hill, by his will, as well as by the antenuptial contract, intended to provide Delta Moss Hill with a home as long as she should live, whether in the specific property at 1824 Ida avenue or some other, and that the specific property having been disposed of, his executrix was under a duty to carry out such intention. To arrive at a conclusion that such was the testators' intention appellee stresses what transpired long after the will was executed, particularly that after the property in Wichita was sold J. E. Hill looked at some real estate in Beloit with a view of possible purchase. The testator's intention is to be derived from his will and the circumstances surrounding its execution. Certainly the will in itself makes no provision such as appellee contends for, and just as certainly there is no evidence whatever that when the will was made any consideration was given to the fact 'the property might be disposed of, or if it was, as to what should then occur or be the result. In effect, appellee asks us to read into the will a provision such as she believes the testator might have made had his attention been directed to it. She is asking that the court reform the will. This court is fully committed to the rule that a court has no power to reform a will, or to make a will for the testator otherwise than as he saw fit to make it. See the following cases: *Holmes v. Campbell College,* 87 Kan. 597, 125 Pac. 25, 41 L. R. A., n. s. 1126, Ann. Cas. 1914 A 475; *Dye v. Parker,* 108 Kan. 304, 194 Pac. 640, 195 Pac. 599; *Hoover v. Roberts,* 144 Kan. 58, 58 P. 2d 83; *Alexander v. Goellert,* 153 Kan. 202, 109 P. 2d 146; *Dyal v. Brunt,* 155 Kan. 141, 148, 123 P. 2d 307.

The contention that J. E. Hill by his will intended to charge his

estate with providing a home for Delta Moss Hill as long as she should live cannot be sustained.

In view of our conclusion as previously stated, it becomes unnecessary to discuss the question of estoppel as presented in the briefs.

The judgment of the district court is reversed and the cause remanded with instructions to render judgment in favor of the appellant.