No. 24,278.

MINNIE M. HUGHES, *Appellee,* v. G. F. VOSSLER, *Appellant.*

SYLLABUS BY THE COURT.

1. BREACH OF PROMISE OF MARRIAGE—*Finding of Jury—Conclusive on Appeal.* Following the rule that the finding of the jury upon a question of fact which is supported by substantial though conflicting evidence is binding upon an appeal in this court, the verdict and judgment herein, in which the defendant was found liable for a breach of a promise of marriage, must be upheld.

2. SAME—*Rulings on Evidence.* Certain rulings excluding evidence have been examined and are held not to be grounds of reversal.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed December 9, 1922. Affirmed.

*Karl V. Shawver, Alpheus Lane, Frank M. Sheridan,* and *B. L. Sheridan,* all of Paola, for the appellant.

*S. J. Shively,* of Paola, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action plaintiff recovered damages for a breach by the defendant of his promise to marry her, and from the judgment defendant appeals.

Upon the first trial the jury returned a verdict in favor of plaintiff, but the trial court granted a motion for a new trial and that ruling was affirmed in this court. (*Hughes v. Vossler,* 110 Kan. 279, 203 Pac. 1107.) The second trial resulted in another verdict for the

plaintiff, which has been approved by the trial court, and the defendant insists that it was not warranted by the evidence.

It is not contended that there is an absence of evidence of a promise to marry but rather that the testimony of plaintiff to the effect that such a promise was made is so at variance with her acts and conduct as to be unworthy of belief. Plaintiff testified that she had been well acquainted with the defendant for about five years before entering into the contract of marriage; that he had proposed marriage several times before she agreed to marry him; that he had taken her to entertainments, gave her a number of valuable presents, and was very affectionate in his relations with her; and further, that on December 6, 1919, he renewed his offer of marriage which was then accepted. She testified that January 2, 1920, was fixed as the wedding day, and that he gave her money to pay for a wedding dress, but that when she met him on January 30, 1920, and told him of a report that she had heard that he was going to marry another, he replied that he was already married. At the time of the claimed engagement the parties had passed the period of adolescence, both being about fifty years old. Each was capable of making a valid marriage contract at the time it was alleged to have been made. She had been married twice but had been divorced from her former husbands, and he had not married until after the alleged betrothal. Defendant testified that there was no promise of marriage; that while he roomed and boarded with plaintiff and paid her for rent and board and had other business relations with her, the matter of marraige was never discussed between them. It is contended that as the correspondence between the parties did not refer in terms to a contemplated marriage, and further that the fact that no reference was even made to the contract in the letters exchanged between them after the alleged contract, and the open rupture between the parties about two months later, refutes plaintiff's evidence that a contract had been made. The plaintiff's testimony in support of her claim is direct and positive and that of the defendant is equally positive that there was no promise to marry. The jury it appears gave credence to that of the plaintiff and disbelieved that given by the defendant and the trial court has added its approval to the verdict.

There were some circumstances in the oral testimony and some in the letters which tend to support the claim of plaintiff. It is conceded that defendant made substantial presents of money to her,

amounting in all to about $3,000. She testified that $50. of that amount was for the purchase of a wedding dress. He was engaged in the oil business and boarded and roomed with her at Osawatomie for a considerable time, and when she moved to Kansas City to attend school he visited her frequently, and his own testimony indicates that there was a close intimacy between them. In his letters he used expressions of endearment and in one of them said to her: "Buy what clothes you want. As long as oil is going up I will not be stingy with you. If you want any more money drop me a line." While she was attending business college and giving special attention to bookkeeping, he wrote her saying: "Well, I hope you will graduate before long, then you can come down and keep books for me and do my cooking." The direct testimony of plaintiff that a promise was made, supported as it is by a number of circumstances, believed as it was by the jury, and which received the approval of the trial court is, under the rule that governs on an appeal, conclusive on this court.

Some objections are made to rulings on the admission of testimony. The plaintiff was asked on cross-examination to give the total amount of money she had received from defendant during the time she had been acquainted with him, to which an objection was sustained. In view of the fact that the many payments of money made by him to her for rents, board and in business transactions, as well as presents given her, had been testified to in detail by the plaintiff in the cross-examination, this ruling cannot be regarded as material error.

Nor was there any error in excluding the evidence as to the amount she had paid for a house which she had purchased.

An objection was sustained to a question asked of witnesses who had executed a lease to defendant as to whether plaintiff had assisted in obtaining the lease. This was manifestly immaterial to the case and its exclusion cannot be regarded as error.

To a question why plaintiff did not, in a letter written by her to defendant after the marriage contract was made, make any reference to the prospective marriage, an objection was sustained. The letter was an acknowledgment of the payment of rent which defendant had made, a business letter in fact. In addition to acknowledging the payment she told him of the serious sickness of her mother, of the treatment given the mother by doctors and a nurse, but no mention was made of the deferred wedding. This inquiry

might well have been allowed but we cannot hold that the exclusion of the proposed evidence as to her reasons for not extending her letter and discussing the contract and its performance is so material as to amount to a ground of reversal.

Finding no substantial error, the judgment is affirmed.