No. 35,350

In re Estate of Mabel Dotson, Deceased (THE STATE DEPARTMENT OF SOCIAL WELFARE, Claimant, *Appellant,* v. THOMAS D. HAMPSON, Administrator, etc., *Appellee*).

(119 P. 2d 518)

Opinion filed December 6, 1941.

*Harold R. Fatzer, H. E. Crosswhite* and *C. M. Maxwell,* all of Topeka, for the appellant.

*E. D. Mikesell,* of Fredonia, for the appellee; *T. D. Hampson* pro se.

The opinion of the court was delivered by

HARVEY, J.: This was an appeal by the claimant from a judgment denying a claim against an estate. The facts are as follows: Mabel Dotson, a resident of Wilson county, was regularly and legally adjudged to be a feeble-minded person in the probate court of that county and committed to the state training school at Winfield, where she was received January 23, 1925. She remained there continuously until her death, intestate, on April 29, 1939. In September of that year, upon proceedings duly had in the probate court of Wilson county, Thomas D. Hampson was appointed and qualified as administrator of her estate. The first notice of his appointment was made September 14, 1939. On October 25, 1939, the state depart-

ment of social welfare filed in the probate court in that estate a "petition for allowance of claim," verified by its attorney, which in part reads:

"Comes now the state department of social welfare, of the state of Kansas, . . . 'and hereby presents its demand against the above-entitled estate in the sum of three thousand seven hundred and ten dollars ($3,710) on account of the claim of the state training school at Winfield, Kansas, for the care and maintenance of Mabel Dotson for the period of time that said Mabel Dotson was a patient at the state training school, as shown by proof of claim hereto attached."

There was attached a verified account to:

"T. D. Hampson, administrator said estate, to the state of Kansas, Dr., for the care and maintenance of Mabel Dotson, a feeble-minded person, at the state training school, Winfield, Kan., from January 23, 1925, to April 29, 1939, 742 weeks, at $5 per week, $3,710. . . . No payment for care and maintenance made."

The petition further stated that the petitioner did not know of any offset that the estate of Mabel Dotson is entitled to, and contained a prayer that the claim be allowed in the sum of $3,710.

Nothing further was done in the matter until November 14, 1940, when Opal Dotson, one of the heirs at law of Mabel Dotson, filed in the probate court a motion to dismiss the claim. A hearing was had on that motion November 26, 1940, and the motion was denied. On the same date the court fixed December 11, 1940, as a time for the hearing of the claim filed October 25, 1939, by the state department of social welfare and made appropriate orders for the giving of notice. Minnie Dotson Carrell, an heir at law of Mabel Dotson, filed an answer to the petition of the claimant in which she stated she did not know whether the account sued on was correct or not, or whether any credits should be allowed thereon, and therefore neither affirmed nor denied the account, but demanded strict proof thereof. She further pleaded that the claim was barred by the statute of limitations in this, that T. D. Hampson was appointed administrator on September 12, 1939, and on September 14 first published his notice of appointment; that the petition of the claimant was filed on October 25, 1939; that no order was made by the court fixing a time for the hearing of said petition within nine months nor within twelve months from the date of the first publication, nor did the administrator appear in court in connection with the hearing nor in connection with any other proceedings of said claim within nine months nor within one year from the date of the first publica-

tion of the appointment. A similar answer was filed by Opal Dotson. The administrator, Thomas D. Hampson, filed a written defense to the claim embodying the same matters in defense as alleged in the answer of Mrs. Carrell. The hearing was had in the probate court December 11, and the claim was allowed. The administrator promptly appealed to the district court, where a jury was waived and a trial had by the court on June 12, 1941. In that court a stipulation was filed which embodied the time Mabel Dotson was in the state training school, and that no payment had been made for her maintenance, care and treatment either by herself or by anyone on her behalf, except that for the years 1929 to 1938, both inclusive, Wilson county paid certain stated sums to the state, the amount of which was stated, "being the actual sum used for the benefit of Mabel Dotson during the time that she was an inmate of the state training school." After hearing evidence offered and the argument by counsel the court took the matter under consideration until June 19, at which time the court made a general finding "for the administrator and against the claimant," and further found "that the claim of the state department of social welfare of the state of Kansas should be disallowed for the reason that the same is barred by the statute of limitations of the state of Kansas as fixed by the probate code of the state of Kansas."

Counsel for appellant in their brief say:

"The claim of this appellant is based upon the following statutes, or such portions thereof as are pertinent: Secs. 76-1611 of G. S. 1935; 39-232, G. S. 1935; 59-2006 of 1939 Supp. to G. S. 1935, and sec. 18, chap. 284, Session Laws of 1941."

This prompts us to give a short history of liability to the state of inmates, or those bound by law to support them, of what is now the state training school at Winfield. It appears that prior to 1909 there was no such liability. (See *The State v. Moore, Adm'r*, 90 Kan. 751, 136 Pac. 232.) In that year the legislature passed "An act relating to the state institution for feeble-minded, located near Winfield, in Cowley county" (Laws 1909, ch. 233), section 3 of which reads:

"The expense of the maintenance, care and treatment of any inmate shall be paid by the guardian out of his estate, or by any person who by law is bound to provide for and support such. person, or the same shall be paid out of the state treasury. The state may at any time recover the per capita cost of the maintenance, care and treatment of the inmates of said institution and for any clothing furnished by the state, and funeral expenses, from the estate of

training school at Winfield in view of G. S. 1935, 76-1611, which such inmate or from any person who by law is bound to provide for and support such inmate. Both the father and the mother of any such inmate shall be bound by law to provide for and support such person."

This was the statute in force when Mabel Dotson was admitted to the institution January 23, 1925 (see R. S. 76-1611). In 1929 this section of the statute was specifically amended and repealed (Laws 1929, ch. 268, now G. S. 1935, 76-1611) by "An act relating to the state training school, providing for the maintenance, care and treatment of persons admitted thereto, . . ." It provides:

"The expense of the maintenance, care and treatment of any person admitted to the state training school . . . shall be paid by the guardian out of the estate of such person or by any person who is by law required to provide for and support such person: *Provided,* That upon application being made for the admission of any person to said school, the probate judge of the county wherein the applicant resides shall investigate the ability of the estate of such applicant, or of any person required by law to provide for and support such applicant, to pay the expenses aforesaid. . . ."

And if the court should find them unable to do so, the judge should certify this information to the board of county commissioners, which was required to pay the sum of forty dollars for each person admitted, and further to pay a similar sum annually for each inmate from the county. This act further provided if the persons were found able to pay the maintenance expenses they should give bond to the state of Kansas to do so. A second section of the act provided for payment by the county of persons previously admitted. We note this statute did not retain the language of the former act; "The state may at any time recover the per capita cost of the maintenance, . . . from the estate of such inmate." . This statute has not specifically been repealed. We shall not pause to consider the effect of the omission first mentioned, or the effect upon this statute, of the enactment of the probate code (Laws 1939, ch. 180), or of the amendment thereto (Laws 1941, ch. 284), since both of these statutes became effective after the death of Mabel Dotson. These statutes act prospectively. (*State v. Moore, Adm'r,* 90 Kan. 751, 136 Pac. 232.)

G. S. 1935, 39-232, referred to by counsel for appellant in their brief, among other things provides:

". . . in all cases of insane persons admitted to the state hospitals, . . . the state may recover the sum of $5 per week to pay a part of the cost of the maintenance, . . ."

Perhaps this statute had no application to inmates of the state

pertains specifically to that institution. The section was one of those specifically repealed by the probate code (Laws 1939, ch. 180), section 170 of which (G. S. 1939 Supp. 59-2006) reads:

"The following shall be bound by law to support persons adjudged to be insane: Spouses, parents, and children. The maintenance, care, and treatment of such person shall be paid by the guardian of his estate, or by any person bound by law to support him, or by the county. In case of payment by the county it may recover the amount paid by it from the estate of such person or from any person bound by law to support such person. The state may recover the sum of five dollars per week, to be applied on the maintenance, care, and treatment of a patient in a state hospital, from the estate of such person, or from any person bound by law to support such person. The state shall annually make written demand upon the spouse, parents, and children liable for the support of the patient for the amount claimed by the state to be due for the preceding year; and no action shall be commenced by the state against such spouse, parents, or children for the recovery thereof unless such action is commenced within three years after the date of such written demand."

This statute went into effect July 1, 1939, which was after the death of Mabel Dotson. By the time of the meeting of the legislature of 1941 the appellant in this case and its counsel, conceiving that the inmates of the state training school at Winfield and the inmates of the state hospital at Parsons for epileptics, and those bound to support them, should be bound to the state for their maintenance and care in those institutions the same as persons adjudged insane and committed to the state hospitals for the insane, caused a bill to be introduced in the legislature amending G. S. 1939 Supp. 59-2006 so that the first sentence of it should read:

"The following shall be bound by law to support persons committed to or received as patients at the state hospitals, as that term is defined in subsection 3 of section 59-2001 of the General Statutes Supplement of 1939: Spouses, parents and children." (Laws 1941, ch. 284, § 18.)

The clause referred to in this amendment (G. S. 1939 Supp. 59-2001 *3*) reads:

"The term 'state hospital' includes the Topeka state hospital for the insane, the Osawatomie state hospital for the insane, the Larned state hospital for the insane, the Parsons state hospital for epileptics, and the Winfield state training school."

The bill so introduced in the legislature passed the senate as a separate act. Because it was an amendment of one of the sections of the probate code the house judiciary committee added it to a bill being considered by the committee amending several sections of the

probate code, and it became section 18 of chapter 284 of the Laws of 1941. So far as the statutes relied upon by appellant, or disclosed by our own research, are concerned, this is the first time in the history of our state when the estate of an inmate of the state training school, or those bound by law to support such inmate, was made liable to the extent of five dollars per week for the care and maintenance of such inmate. We assume and have reason to believe the trial court in this case was familiar with these statutes, and hence that the general finding of the trial court in favor of the administrator and against the claimant has force.

Appellant in its brief says:

". . . since the appellee has not disputed either the correctness or the amount of appellant's claim, . . . we will proceed to the main point in issue."

This position is not tenable. The written defense filed by the administrator and the answer of each of the heirs at law neither admitted nor denied the claim, and left the claimant to his burden of strict proof. There was no consent respecting the validity of the claim or its amount. Indeed, the administrator would have no authority to make such a consent.

Passing lightly over the point above discussed, appellant contends the court erred in holding the claim of the state was barred by the statute of limitations. It is true the three years limitation imposed upon the state by the latter part of G. S. 1939 Supp. 59-2006 and by section 18 of chapter 284, Laws 1941, pertains only to the claim of the state against "spouse, parents, or children" of the inmate of the institution and is not against the estate of the inmate. But this misses the point the trial court had in mind.

The defense of the administrator, and the answers of the heirs, to appellant's claim raised the question the claim was not heard or set for hearing by the probate court within the time required by the probate code, and this is the point ruled upon by the trial court.

Although the probate code did not become effective until after the death of Mabel Dotson, the parties appear to agree the procedural provisions of the code are applicable. We think that is correct. (G. S. 1939 Supp. 59-2602.) We pause to note that if the procedural statutes in force at the time of the death of Mabel Dotson were applicable, the hearing on this claim was not in time. (*Bristow v. First Trust Co.*, 140 Kan. 711, 38 P. 2d 108; *Lane v. Estate of Wells*, 150 Kan. 261, 92 P. 2d 9; *Allen v. Turner*, 152 Kan. 590, 595, 106

P. 2d 715.) The probate code did not lengthen the time of present-ing or hearing claims; on the contrary where any change was made the time was shortened; hence, the reasons underlying the decisions last cited are applicable here.

Pertinent excerpts from the probate code, applicable here, are as follows (all references are to G. S. 1939 Supp.):

"Every application in a probate proceeding, . . . shall be by petition. . . ." (59-2201.)

"A probate proceeding may be commenced in the probate court by filing a petition and causing it to be set for hearing. When a petition is filed the court shall fix the time and place for the hearing thereof. . . ." (59-2204.)

"Any person may exhibit his demands against the estate of a decedent by filing his petition for its allowance in the proper probate court. . . . The court shall from time to time as it deems advisable, and must at the request of the executor or administrator, or at the request of any creditor having ex-hibited his demand, fix the time and place for the hearing of such demands, . . ." (59-2237.)

"All demands, including demands of the state, . . . not exhibited as re-quired by this act within nine months after the date of the first published no-tice to creditors as herein provided, shall be forever barred from payment; . . ." (59-2239.)

"Every executor and administrator shall have one year from the date of his appointment for the settlement of the estate. . . . For cause shown the period herein limited may be extended by the court, not exceeding one year at a time." (59-1501.)

These sections of the statute outline a relatively simple procedure. One who applies to the court for the allowance and payment of his claim must do so by petition. He commences the proceeding by fil-ing a petition and causing it to be set for hearing. He "exhibits" his demand by filing a "petition for its allowance," and "all de-mands, . . . not exhibited as required by this act" within nine months of the first published notice to creditors are "forever barred." Appellant argues the word "exhibit" simply means filing the petition. We think that view not tenable. He files a "petition for its allowance," and the only type of petition he can file and start the wheels of justice moving in his behalf includes the filing of the petition and causing it to be set for hearing. There is a similar pro-vision in our code of civil procedure (G. S. 1935, 60-301), which in effect recites that a civil action may be commenced by the filing of a petition and causing a summons to be issued thereon. No one would contend that the simple filing of a petition in the district court, without causing a summons to be issued thereon, would be the com-

mencement of an action or would stop the statute of limitations from running. We think the same reasoning applies here. The simple filing of the petition is not the beginning of a probate proceeding, nor does it stop a statute of limitations from running.

Appellant points out that it is the duty of the court to fix the time and place of hearing. Certainly it is the function of the court to fix the time of hearing, but the duty is imposed upon the claimant to cause that to be done, and with reference to demands against the estate the statute specifically provides that the court must fix the time at the request of any creditor who has exhibited a demand.

As above seen, the statute also contemplates the estate will be in condition to be closed within a year. Clearly the statute contemplates that all demands shall be properly exhibited; that is to say, a petition shall be filed and caused to be set for hearing within nine months after the first notice of the appointment of the administrator. This then gives three months time to hear demands and for the administrator to get ready to close the estate. Because there may be estates in such situation that the endeavor to close them within a year would be futile, provision was made that the court, for cause shown, might extend the time of closing the estate. There is no provision, however, for the court extending the time of filing petitions for the hearing of demands and causing them to be set for hearing. That must be done within the nine-months period.

With respect to the time within which to present the demand against an estate, the state is in the same position as any other creditor. There is no hardship in this, particularly with respect to the type of claim attempted to be enforced here, for the state knew of the death of Mabel Dotson as soon as it occurred. There is no reason why it could not have moved promptly.

We think the matter here discussed is what the trial court had in mind when it held the demand in this case to be "barred by the statute of limitations of the state of Kansas as fixed by the probate code." We concur in that view.

The judgment of the trial court is affirmed.