No. 37,557

In re Estate of F. M. WELCH, Deceased (R. H. SHAW, Administrator, and CARRIE BELL, *Appellees*, v. MARGARET A. U. WELCH, *Appellant*).

(204 P. 2d 714)

Opinion filed April 9, 1949.

*Ross E. Borders,* of Independence, argued the cause, and *James A. Brady,* of Cherryvale, was with him on the briefs for the appellant.

*C. W. Mitchell,* of Cherryvale, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal from an order of the district court overruling the demurrer of an heir, the widow of a decedent's estate, to a petition of the administrator for final settlement and distribution and the overruling of the same demurrer to two portions of separate answers of an heir, the decedent's daughter, to two separate petitions filed by the widow setting forth her alleged claims to and interest in the decedent's estate. The petitions and answers were all filed in the probate court. The demurrer was filed by the widow in the district court.

We shall refer to the appellant as the widow and to appellee as the daughter. Although the administrator is also shown as an appellee the parties concede he is not really a necessary party to this appeal. In order, however, that the procedure pursued may be clear we shall, in substance, set forth the administrator's petition for final settlement and distribution.

The above mentioned petition of the administrator, in substance, alleged the widow was entitled to no portion of the estate and the daughter was entitled to all assets of the estate, except the necessary expenses and costs of administration, by virtue of a marriage agreement entered into by the deceased husband and the widow which the administrator denominated as a postnuptial agreement.

The widow was the daughter's stepmother. The probate court

records show that about five months after the first publication of the administrator's notice to creditors the administrator's attorney filed in the probate court a certified instrument purporting to be a marriage agreement executed by the decedent and the widow on July 21, 1942, and recorded by the register of deeds of Montgomery county on July 23, 1942. The daughter filed no claim asserting rights thereunder within the statutory period for filing claims. In her petition for administration the daughter alleged she and the widow were decedent's sole heirs at law. The widow promptly answered claiming the rights of heirship as a widow and one-half of decedent's estate.

We come now to later pleadings filed in the probate court to a portion of which the widow demurred in the district court and to the order from which she has appealed to this court. These pleadings were all filed after the administrator's report for final settlement but before judgment of final settlement and distribution. The pleadings were all filed after the nine months' period of the nonclaim statute.

In the first of these petitions the widow sought a widow's allowance in the sum of $750 and one-half of the estate. She alleged a marriage agreement under date of July 21, 1942 (the agreement was not set out), had been orally revoked during the marriage on the ground it was considered unfair to her.

In the second and later petition the widow sought an order allowing her the proceeds of the sale of described city real estate which she alleged had been her and decedent's homestead. This property had been sold on a contract of installment payments during decedent's lifetime.

The answers of the daughter to those petitions of the widow asserted the marriage agreement as the basis of her claim that she was entitled to the entire estate. This was the first time the marriage contract was set up in a pleading as the basis of the daughter's claim to the estate. The daughter alleged that agreement was a bar to the widow's rights of inheritance, to a widow's allowance and to homestead rights. The widow's demurrer, filed in the district court, challenged those portions of the daughter's answers and the petition of the administrator for final settlement which were based on the marriage contract. By the demurrer it appears the widow attempted to obtain a ruling on the legal question whether the marriage contract barred her from obtaining a widow's allow-

ance, a homestead interest or one-half of the estate. Another ground of the demurrer was that the marriage contract pleaded by the daughter, as the basis of her claim, constituted a claim or demand against the estate and that it was not filed within the period of the nonclaim statute.

Portions of the daughter's first answer other than those above mentioned denied the marriage contract had been abrogated.

Portions of the daughter's second answer, other than those challenged by demurrer, alleged the property which the widow claimed as a homestead, if it ever was the homestead, had been abandoned as a homestead several years before decedent's death and that other property owned by the widow individually had been their home for many years.

We therefore find factual issues joined by the widow's petitions and the answers of the daughter relative to whether the marriage agreement continued to be operative and also whether the real estate in question constituted a homestead. Neither of those factual issues had been determined by the district court. If the marriage contract were in fact abrogated during the marriage the widow's rights could not be affected by the previous contract and no rights accrued to the daughter by reason of such canceled contract. So long as the pleadings clearly presented such factual issues the demurrer was properly overruled. This is true irrespective of whether the ruling was based on the theory we have stated or whether it was based on the court's interpretation that the contract barred all rights of the widow. The ruling must be affirmed if it was correct on any theory. From what has been stated it must not be inferred we are now determining the legal effect of the marriage contract.

This brings us to the widow's contention the marriage contract was pleaded by the daughter for the purpose of establishing she was not merely entitled to a child's share of the estate by inheritance, but that she was the owner of the entire estate by virtue of the contract, less the expense and costs of administration; if the contract entitled her to receive some particular portion of the estate, or all of the estate as the daughter contends, then such a contract constitutes a claim or demand against the estate and against the interests of the other heir, the widow, which the daughter was required to file in the probate court within the statutory period and in the manner provided by law; that was not done and the administrator could not waive the requirement.

The widow cites sections of the 1947 Supp. requiring, and cases holding that every application in the probate court must now be by petition (59-2201); demands are exhibited by filing a petition in the probate court (59-2237) and unless so exhibited within nine months after the date of the first published notice to creditors the claim or demand is barred (59-2239); *In re Estate of Dotson,* 154 Kan. 562, 568, 119 P. 2d 518; *In re Estate of Whittelsey,* 156 Kan. 157, 160, 131 P. 2d 911. The daughter does not contend she complied with any of such statutory requirements. If she prevails it must be on another theory to be stated later.

The decedent died intestate. The heirs at law were the widow and the daughter. If there were no contract, and there was no will, the widow would be entitled to the rights of an heir and widow under the law. The daughter as the other heir would be entitled to a child's share under the law of intestate succession.

The question, therefore, is whether, assuming the marriage contract entitles the daughter to the entire estate, as she contends, it constitutes a claim or demand against the estate. The widow concedes the daughter would not be required to file a claim if she were claiming only an heir's, a child's, share by inheritance. That is true. (*In re Estate of Grindrod,* 158 Kan. 345, 361, 148 P. 2d 278; *Houdashelt v. Sweet,* 163 Kan. 97, 101, 180 P. 2d 604.) The widow, however, contends the daughter is not claiming merely an heir's, a child's, share by inheritance, but on the contrary is asserting additional rights in and to the estate not based upon inheritance at all but upon a specific contract made by her father and stepmother for the daughter's benefit. The widow's contentions may be summarized by stating: The daughter is seeking the enforcement of a contract which the daughter claims entitles her to a larger share of the estate than a child's share by inheritance; the assertion of such rights in and to the assets of the estate is a claim or demand which will take from the estate the amount another heir, the widow, would take by inheritance and under the law as a widow; the allowance of the daughter's claim will, therefore, leave nothing in the estate to be distributed to the other heir, the widow. In support of the widow's contention that such a contract constitutes a claim or demand she cites the following cases based on contractual rights to all or portions of an estate: *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 438; *Dixon v. Fluker,* 155 Kan. 399, 125 P. 2d 364; *Yeager v. Yeager,* 155 Kan. 734, 129 P. 2d 242; *Swisher v. Bouse,* 155 Kan.

797, 130 P. 2d 565; *Burns v. Drake,* 157 Kan. 367, 139 P. 2d 386. Those cases and others are cited in *Gantz v. Bondurant,* 159 Kan. 389, 155 P. 2d 450, also relied on by the widow. It is true that concerning those cases and others we said in the Gantz case:

"In none of the above cases was the claim or demand against the estate for money. In each case it was specifically a claim or demand to all or a portion of the decedent's estate and was based upon the theory that claimant was entitled to be decreed the owner thereof." (p. 394.)

The widow also relies on cases holding the probate court has exclusive original jurisdiction to determine the title, legal or equitable, to real estate where necessary to settlement and distribution of decedent's estate and that unless such claim is filed within the period of the nonclaim statute it is barred. (*Gantz v. Bondurant,* supra; *In re Estate of Bourke,* 159 Kan. 553, 156 P. 2d 501; *In re Estate of Hill,* 162 Kan. 385, 176 P. 2d 515; *In re Estate of Pratt,* 164 Kan. 512, 517, 190 P. 2d 872, in which *Houdashelt v. Sweet,* supra, and other cases are cited.)

The widow directs attention to *Burns v. Drake,* supra, in which the petitioner claimed a particular portion of the decedent's estate, real property, by virtue of a contract with the decedent and in which we said:

"If one who contests a will must now start in the probate court and appeal is barred after nine months, why should not one who claims a right, either legal or equitable, to estate property as against those claiming by inheritance be required to assert his claim within a nine-months period? We think that was the legislative intent and see no hardship in the requirement." (p. 371.)

To the same effect the widow sites *Gantz v. Bondurant,* supra, p. 394.

In the Hill case, *supra,* the husband and widow had executed an antenuptial contract giving the widow a homestead in certain property for life together with its furnishings. A subsequent will executed by the husband with the widow's consent gave her the same homestead and furniture for life. The homestead and furnishings were later sold by them jointly. It was held the clause of the will which gave her that specific property was adeemed by reason of having been sold and not being a part of his estate at the testator's death. The district court, however, concluded as a matter of law, that the antenuptial contract was binding and that the widow should receive an amount out of the assets of the estate equivalent to the home and furnishings. The antenuptial contract had not been filed

by the widow within the period of the nonclaim statute. We reversed the trial court on the grounds the court could not make a new will for the parties and thereby give the widow an amount out of the estate in lieu of the homestead and by concluding further that the antenuptial contract constituted a claim or demand which, not having been filed within the statutory period, could not be asserted; that the administrator could not waive the necessity of proving the antenuptial contract as a claim within the statutory period.

The widow emphasizes the fact that in the Hill case the parties made no contention the antenuptial contract constituted a claim or demand which had to be filed within the period of the nonclaim statute and that notwithstanding the absence of such a contention this court said:

"Although not mentioned in the briefs, there is a matter implicit in the judgment of the district court which we think should be mentioned and decided. As has been stated, the district court's judgment was grounded solely on the binding force of the antenuptial contract. If that judgment is carried out Delta Moss Hill will receive an amount out of the assets of the estate which was not bequeathed to her, and thus the amount to be received by the residuary legatees will be reduced. Under our decisions, whatever rights Delta Moss Hill had under the antenuptial contract, as interpreted by the district court, constituted a demand against the estate of J. E. Hill. (See, e. g., *In re Estate of Grindrod,* 158 Kan. 345, syl. ¶ 5, 148 P. 2d 278; *Gantz v. Bondurant,* 159 Kan. 389, 155 P. 2d 450; and *In re Estate of Bourke,* 159 Kan. 553, 156 P. 2d 501.) Under the provisions of G. S. 1945, 59-2239, it was necessary, if Delta Moss Hill had a demand against the estate of J. E. Hill, that she make claim thereon within the time provided by that statute. Delta Moss Hill did not file any claim in the time fixed. Under such circumstance, the executor was without power to waive the statute of limitations or nonclaim (*Allen v. Turner,* 152 Kan. 590, syl. ¶ 2, 106 P. 2d 715; *In re Estate of Badger,* 156 Kan. 734, syl. ¶ 1, 137 P. 2d 198) and if, in an attempt to prove such a claim, is developed it was barred, it was the duty of the court to disallow it. (*Hammond v. Estate of Hammond,* 150 Kan. 113, 91 P. 2d 19.) It follows that Delta Moss Hill, not having filed her claim in the probate court, may not recover from her husband's estate on account of their antenuptial contract." (p. 392.)

The widow asserts the fundamental principle in the instant case is the same as in the cases she has cited. She states that in the instant case the marriage contract, if interpreted and allowed as the daughter contends, will enable the daughter to appropriate to herself a larger amount out of the assets of the estate than she would inherit as an heir at law and that the amount to be received by the

other heir, the widow, would not only be reduced thereby but entirely wiped out.

On the other hand the daughter contends: G. S. 1947 Supp. 59-2236 shows that claims and demands apply only to creditors of an estate; an heir, when a decedent dies intestate, is not required to make a claim or demand for his inheritable share; the widow in the Hill case was an outsider trying to get something out of the decedent's estate while in the instant case the daughter is claiming as an heir; G. S. 1947 Supp. 59-2247, which provides for notice of final settlement, permits heirs to assert their claims against an estate, or to any part thereof, at any time up to and including the hearing for final settlement and distribution.

G. S. 1947 Supp. 59-2247 provides:

"The petition of an executor or an administrator for a final settlement and accounting, and a determination of the persons entitled to the estate of a decedent, shall, in addition to other requirements, contain: (1) A statement of the account; (2) the names, residences, and addresses of the heirs, devisees, and legatees; (3) a description of the real estate and the interest of the decedent therein at the time of his death; and (4) the nature and character of the respective claims of the heirs, devisees, and legatees of the decedent. Notice of the hearing thereof shall be given pursuant to section 185 [59-2209]."

G. S. 1947 Supp. 59-2209 referred to in the previous section pertains to the nature of the notice for a hearing which must be given where a statute expressly refers to such notice section. G. S. 1947 Supp. 59-2210 sets forth the substance of a notice of hearing wherever notice of a hearing is required.

Although this court does not agree with all of the daughter's above contentions it is of the opinion the allowance of the marriage contract, assuming it entitles the daughter to the entire estate and deprives the widow of all rights therein, takes nothing out of the estate which would otherwise be left for distribution to the other heir, the widow; it determines only which of the heirs will receive the assets of the estate and does not constitute a claim or demand against the estate; it may be asserted by the other heir, the daughter, at the hearing for final settlement and distribution as a defense to a prior pleading of the widow in which she claims as an heir and widow.

The motion of the daughter to dismiss the appeal in the instant case has been examined and found to be without substantial merit. The order of the district court overruling the widow's demurrer is affirmed.

HARVEY, C. J., concurs in the affirmance of the judgment of the trial court.

PARKER, J. (concurring): In the instant case the widow contends an antenuptial contract, which in effect fixes the distributive rights of the heirs of an intestate decedent when his estate is ready for final distribution, constitutes a demand against such estate under provisions of the new Kansas probate code.

This, as I read our decisions, is the first time this particular question has been squarely raised since the enactment of the new code. For that reason it is deserving of a forthright and definite answer.

I am convinced the phrase "all demands" as used in what is commonly known as the nonclaim statute (G. S. 1947 Supp. 59-2239) has reference only to claims against the estate of a decedent which, if allowed, will reduce the corpus of his estate or the amount of property which would otherwise be subject to division or distribution among the heirs of an intestate decedent or the legatees and devisees of a testate decedent as the case may be.

The controversy here involved is between contending heirs as to the proportionate share each will receive out of the decedent's estate and is in no sense to be regarded as a claim or demand against the estate under the statute. It follows the legal effect of the marriage contract insofar as it affects the heirs' rights to the estate now ready for distribution is a matter for consideration at the hearing on final settlement where, under the statute (G. S. 1947 Supp. 59-2249), the court is required to determine the heirs, devisees and legatees entitled to every estate, state the proportion or part thereof to which each is entitled and assign the same to them by its decree. Therefore, I hold that portion of the demurrer to the petition, predicated upon the premise that rights asserted by the daughter by reason of the contract are barred by the nonclaim statute, was properly overruled.

In reaching the foregoing conclusion I have not been unmindful of the widow's contention that several of our cases, set forth in the majority opinion, support her position. When they are carefully analyzed I believe they are all distinguishable. Be that as it may, if any of such decisions, or any language to be found therein, are susceptible of such a construction I am convinced that both language and decisions should be promptly and frankly disapproved.

HARVEY, C. J., SMITH, THIELE, PRICE and ARN, JJ., join in the foregoing concurring opinion.

WEDELL, J. (dissenting): To be a lone dissenter always demands a careful reëxamination of one's own views. Having conscientiously responded to that demand I cannot bring myself to agree with the judgment rendered or the reasoning upon which it is based. I am therefore obliged to dissent.

With entire respect for the views of my brethren I shall endeavor to state my own views. Limitations of time prevent reference to numerous statements of principle contained in our previous decisions which I would prefer to make. It will be observed a majority of the court concurs in the opinion of the court which it fell to my lot to write and that a majority likewise has joined in a concurring opinion by Mr. Justice Parker. It is my view that our previous cases in point are in principle contrary to the judgment of the court in the instant case. I do not believe they can be harmonized and I adhere to our previous decisions and to the fundamental reasoning upon which they are based.

What lawyers and trial judges are constantly concerned about is to have settled decisions to guide them in order that lawyers may advise their clients and that judges may rule and instruct juries with a reasonable sense of certainty and assurance that they are right. I agree fully if previous decisions of this court are erroneous we should readily concede our error. On the other hand, before we overrule such decisions we should be convinced the new ones are grounded on better doctrine and sounder reasoning.

This is a case in which only heirs are involved. One is the daughter of an intestate decedent. The other is decedent's widow, the daughter's stepmother. The daughter filed a petition for administration and listed herself and the widow as the sole heirs at law. The widow answered promptly, waived her right to serve as administratrix in favor of R. H. Shaw as administrator. She immediately claimed a one-half interest in the estate by inheritance and her rights as a widow under the law. The daughter later claimed not only a child's share, as an heir at law, but other rights under a marriage contract executed by her father and stepmother. The daughter did not exhibit her claim under that contract until after the nonclaim statute had run. She does not contend she exhibited her claims under the marriage contract within the time

and manner in which it would be required if her claimed rights constituted a claim or demand under the claim statute (G. S. 1947 Supp. 59-2239) or the decisions of this court construing it. (*In re Estate of Dotson*, 154 Kan. 562, 568, 119 P. 2d 518; *In re Estate of Whittelsey*, 156 Kan. 157, 160, 131 P. 2d 911.)

It is conceded an heir at law need make no claim for an ordinary inheritable interest under the law of intestate succession. (*In re Estate of Grindrod*, 158 Kan. 345, 361, 148 P. 2d 278; *Houdashelt v. Sweet*, 163 Kan. 97, 101, 180 P. 2d 604.) But the claimed rights of an heir in and to an estate, other than a mere right by inheritance, must be exhibited within the time and manner required by the nonclaim statute. (G. S. 1947 Supp. 59-2239.) That statute does not exempt heirs who have claims or demands against an estate. The statute includes claims of heirs of every kind and character, other than an inheritable interest, which are necessary to make a proper order of final settlement and distribution under the provisions of the final settlement statute. (G. S. 1947 Supp. 59-2249; *In re Estate of Grindrod*, supra; *Gantz v. Bondurant*, 159 Kan. 389, 155 P. 2d 450; *In re Estate of Wenzel*, 161 Kan. 545, 557, 170 P. 2d 618; *In re Estate of Hill*, 162 Kan. 385, 176 P. 2d 515.)

The cases just cited are not intended as a complete list of our cases involving claims of heirs. They are merely those that readily come to my mind. The instant case is not the first involving the question of the right of an heir to wait until final settlement to assert his rights. Insofar as I have been able to ascertain this court has never before held that an heir may wait until the hearing for final settlement and distribution to assert a controversial claim to a portion of a decedent's estate if proper notice of the pendency of the administration has been had. We denied the widow such a right in the Wenzel case, *supra*, and held she was obliged to file her objections to a will within the period of the nonclaim statute. We there said:

"In the two objections to the final order of distribution which were filed many months after the nine months period Lela attempted for the first time to avoid the effect of her consent to the will. These two pleadings ask an adjudication that would strike down the will and under many of our recent holdings were filed too late. See G. S. 1945 Supp. 59-2239, also *Foss v. Wiles*, 155 Kan. 262, 124 P. 2d 438; *Yeager v. Yeager*, 155 Kan. 734, 129 P. 2d 242; *Swisher v. Bouse*, 155 Kan. 797, 130 P. 2d 565; also *Burns v. Drake*, 157 Kan. 367, 139 P. 2d 386." (p. 557.)

We have likewise held a widow could not wait until the hearing

for final settlement to select and describe a particular property which she claimed as a homestead but was required to do so promptly when a controversy concerning that subject existed. (*Meech v. Grigsby*, 153 Kan. 784, 788, 113 P. 2d 1091.)

Nor is this the first case involving the question whether alleged rights, under a marriage contract relied upon by an heir, constitute a claim or demand against an estate. In the Hill case, *supra*, the marriage contract gave the widow the homestead and its furnishings for life. They were later sold by a joint conveyance of the husband and wife. The district court concluded that by virtue of such contract the widow should be allowed an amount from the estate equivalent to the value of that property. We reversed the ruling. One of the grounds for the reversal was that the asserted rights under the antenuptial contract constituted a claim or demand *against the estate* and that since the claim under the contract had not been exhibited within nine months the rights claimed thereunder were barred. Moreover, we felt it our duty to determine that point although it had not been raised by the parties.

Now in the instant case a part of the estate which an heir, the daughter, claims by virtue of the marriage contract is the proceeds of the sale of a homestead which had been sold prior to decedent's death. In this case we now say the daughter's claim to that part of the estate asserted, by virtue of the marriage contract, is not a claim or demand and need not be exhibited within the time and manner prescribed by the nonclaim statute. What, in principle, is the distinction?

Another part of the estate the daughter claims, also by virtue of the same contract, is the amount the widow sought as a widow's allowance. We now say that is not a claim or demand against the estate. In what manner does that differ, in principle, from the Hill case?

An additional part of the estate the daughter likewise claims, by virtue of the same marriage contract, is the widow's share of the estate by inheritance. We now say that is not a claim or demand. How is that ruling to be distinguished, in principle, from the Hill case?

I simply cannot find a sound basis for differentiating the decisions in these cases. Here the heir, the daughter, by virtue of the marriage contract, asserted rights to three separate and distinct portions of the estate claimed by the widow. Any of these, if allowed to the

daughter, would have *reduced the residue which otherwise would have remained for distribution* between the widow and the daughter as heirs. That is the test of a claim or demand upon which the decision in the Hill case rests. I cannot agree that if an heir, as in the Hill case, claims only one portion of an estate under a marriage contract it constitutes a claim or demand because, if allowed, it would reduce the amount left for distribution—but if an heir, as in the instant case, claims a right to three separate and distinct portions of the estate, other than her own inheritable share, she is not asserting a claim or demand which, if allowed, would reduce the assets otherwise remaining for distribution.

We now also say the controversy in the instant case is merely between contending heirs as to the proportionate share each will receive out of decedent's estate and is in no sense to be regarded as a claim or demand against the estate. I am unable to follow the logic of that reasoning. A controversy such as that just mentioned would exist in every estate where various heirs, as here, claimed the same portions of the estate. And that would be true irrespective of the theory on which the claims might be based. Here one heir claimed a one-half interest in the estate by inheritance and her rights as a widow. The other heir, the daughter, is contesting those rights. Her claim, as all claims to a portion or all of an estate, is made adversary in character by the new probate code and as such must be asserted as the code provides. (*Egnatic v. Wollard,* 156 Kan. 843, 854, 137 P. 2d 188.) And see p. 854-856 where it is expressly stated that a claim to a portion of an estate, based on contract, is one of the adversary claims which must be asserted by petition and in the manner provided by the code.

It seems to me the inevitable result of the majority decision is that heirs, irrespective of what the nature or character of their antagonistic claims or demands may be, can wait and assert their alleged rights at the time of final settlement and distribution. If they are permitted to so wait to present their claims what becomes of the claim or demand statute insofar as heirs are concerned? What, for example, will be the effect of this decision upon partial distributions made in the meantime? What will be the effect upon other administrative acts resulting from belated claims of heirs asserted only at the time of final hearing for settlement and distribution?

It is evident this was precisely the confusion in, and uncertainty

of, administering decedent's estates that the new code was designed to prevent. (*Burns v. Drake,* 157 Kan. 367, 139 P. 2d 386, and numerous cases therein discussed.) The law compels the administrator in his petition for final settlement and distribution to set forth "the nature and character of the respective *claims of the heirs,* devisees, and legatees of the decedent." (G. S. 1947 Supp. 59-2247.) (Italics supplied.) Manifestly, an administrator cannot comply with this legislative mandate if the claims of heirs have not been previously exhibited as required.

This decision, in my opinion constitutes a clear departure from the true spirit, intent and purpose of the probate code. To my mind it also constitutes a serious departure from our previous decisions which many members of the bench and bar have come to understand as settled probate law. I do not approve overruling these decisions or rendering a new decision which confuses these sound established principles.

One other subject requires attention. It is the order of the district court which overruled the demurrer of the widow to the petition of the administrator for final settlement and to specific portions of the answers filed by the daughter in all of which pleadings the marriage contract was set up as the basis of the daughter's claims. This court has sustained the order of the district court overruling the demurrer to those three pleadings. It has done so on the theory that the rights asserted by the daughter under the marriage contract are not a claim or demand and, therefore, it was not necessary to exhibit the claims within the nine-month period. As already indicated I do not agree with that conclusion. I think the demurrer should have been sustained on that particular ground.

The other ground of the widow's demurrer was that the marriage contract did not bar her rights to inherit and to obtain a widow's allowance and homestead privileges. That portion of the demurrer called for an interpretation of the legal effect of the contract. In view of this court's ruling that the daughter's claim under the contract is not barred, a ruling on the legal effect of the contract is highly important and should be made. It is my opinion that ground of the widow's demurrer was properly overruled by the district court.

The majority opinion holds that the legal effect of the contract is not before us. With that ruling I am not in accord. The petition of the administrator for final settlement was based squarely on the

marriage contract. The demurrer challenged only the specific portions of the daughter's answer in which the marriage contract was alleged and admitted to be in full force and effect. G. S. 1935, 60-717, expressly authorizes a demurrer to new matter alleged in an answer. The marriage contract was new matter. This court should, therefore, pass upon the legal effect of the marriage contract in order that the district court may know whether its ruling on that ground of the demurrer was proper. I think its ruling on that ground was proper for the reason that the marriage contract shows on its face it barred the widow's right of inheritance and of all other rights in and to the estate. In other words, if the daughter had exhibited the marriage contract in the time and manner provided by the claim and demand statute she would have been entitled to a judgment granting her all of the estate except the costs and expenses of administration. Since she did not do so she cannot rely on the contract as a basis for her various claims to portions of the estate in addition to her right of inheritance.