No. 37,990

In the Matter of the Estate of F. M. Welch, Deceased. MARGRET A. U. WELCH, *Appellant,* v. R. W. SHAW, Administrator, and CARRIE BELL, *Appellees.*

(223 P. 2d 978)

Opinion filed November 10, 1950.

*Ross E. Borders,* of Independence, argued the cause, and *James A. Brady,* of Cherryvale, was with him on the briefs for the appellant.

*C. W. Mitchell,* of Cherryvale, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an action to determine the respective rights of a daughter of decedent by a former marriage, and the widow of decedent. The trial court held in favor of the daughter. The widow has appealed.

The facts involve an earlier appeal to this court. (See *In re Estate of Welch,* 167 Kan. 97, 204 P. 2d 714.) The dispute is between the widow of decedent on the one hand and his daughter by a former marriage on the other. Decedent died on June 16, 1947. He was survived by his widow, Margret U. Welch, and a daughter by a former marriage, Carrie Bell. A petition for the appointment of an administrator was duly filed on June 20, 1947, by Carrie Bell. This petition was joined in subsequently by Margret. She claimed, however, to have a one-half interest in the estate by inheritance to be entitled to the rights of a widow. The administrator was duly appointed on July 30, 1947, first published his notice of appointment, and that persons having demands against the estate must exhibit them within nine months.

On January 24, 1948, the following agreement was filed in probate court by the attorney for the administrator:

## "AGREEMENT

"THIS AGREEMENT, made and entered into this 21st day of July, 1942, by and between F. M. Welch, party of the first part, and Margret A. U. Welch, party of the second part, both of Cherryvale, Montgomery County, Kansas, witnesseth:

"That whereof the parties to this agreement are husband and wife, having been united in matrimony on the 15th day of July, 1942, and whereas each of said parties possesses property, real and personal, which he or she had accumulated before the said marriage took place; and whereas each of said parties have been previously married, and have a child or children by the former wife or husband, which child or children would inherit the said parent's property had this said marriage not taken place;

"AND WHEREAS prior to the said marriage, and in consideration thereof, the said parties entered into an oral agreement with respect to their separate properties, the terms of which oral agreement are hereinafter set forth as the terms of this written agreement.

"Now THEREFORE, it is agreed by and between the parties hereto in consideration of the mutual agreements, each to the other, hereinafter set out, and in confirmation of said oral agreement which was made in consideration of marriage, as follows:

"That the party of the first part has agreed and does hereby agree that he shall have and claim no right, title or interest in or to any of the property, either real or personal which the party of the second part now owns or which she may hereafter individually acquire, and to that end he hereby expressly releases, surrenders and quitclaims until the said second party, her heirs, executors, administrators, or assigns, any and all right, title or interest in or to such said property of the second part (party) which he might otherwise acquire or assert by reason of being the husband of such second party; and he further agrees that the party of the second part may own, sell, devise, bequeath, pass by inheritance, or otherwise manage or dispose of such said property belonging to her, in the same manner and to the same extent as though she were a single person.

"The party of the second part likewise agrees that she shall have and claim no right, title or interest in or to any of the property, either real or personal, which the party of the first part now owns or which he may hereafter individually acquire, and to that end she hereby expressly releases, surrenders and quitclaims unto the said first party, his heirs, executors, administrators, or assigns, any and all right, title or interest in or to such said property of the first part (party), which she might otherwise acquire by reason of being the wife of such first party; and she further agrees that the party of the first part may own, sell, devise, bequeath, pass by inheritance, or otherwise manage or dispose of such said property belonging to him in the same manner and to the same extent as though he were a single person.

"It is further understood and agreed that in the event of the death of either party hereto, the expense of his or her last illness and funeral expenses shall be paid out of the individual property of said deceased party, and shall not become a debt of the other party thereto, or a charge upon the individual property of such survivor.

"In the event that these said parties should separate and cease to live together as husband and wife, each is to have absolute control of his or her individual property, and to have and assert no claim over the individual property of the other.

"It is further agreed that the term 'individual property' as used herein, shall refer to property of any nature whatsoever, owned by either of the parties hereto at the time of their said marriage. It is further agreed that if any additional property shall be accumulated by these parties through their joint efforts, during the period of their married life, said jointly accumulated property shall not be affected by the terms of this agreement, but on the death of either party, shall be subject to the existing laws of descent.

"In witness whereof, the parties of this agreement have hereunto set their hands the day and year first written.

> F. M. WELCH,
> Party of the first part.
> MARGRET A. U. WELCH,
> Party of the second part."

On May 25, 1948, Margret filed a petition asking the court to set aside $750 as her statutory widow's allowance and alleged that she was entitled to her widow's allowance. She further stated that the agreement, which has already been set out here, was revoked during the lifetime of the parties and was not in effect at the time of decedent's death. She asked that she be allowed the $750 and that one-half of the property of decedent be set apart to her as an heir.

On June 19, 1948, the administrator filed a petition for allowance of final account. In this petition he alleged that Carrie Bell in his belief was entitled to all of the assets of the estate and that Margret was not entitled to participate therein.

On July 3, 1948, Carrie Bell filed an answer to Margret's petition. In this she admitted that Margret was the widow of decedent, but denied that she was entitled to a widow's statutory allowance or a distributive share of the estate, for the reason advanced that her claim for a widow's allowance was not filed in time and that all of Margret's rights were fixed by the written agreement. She alleged that the written agreement had never been abrogated or rescinded and was in full force. She asked that Margret take nothing from the assets of the estate.

On July 15, 1948, Margret filed a petition in the probate court. She described a parcel of real estate in Cherryvale and alleged that it was occupied as a homestead by herself and decedent while they were husband and wife and that it had been conveyed under contract by her and decedent and that she owned the homestead inter-

est in it in the amount of $3,800. She prayed for an order setting aside that amount to her.

On July 26, 1948, Carrie Bell filed an answer in which she denied all the allegations of Margret's petition of July 15; admitted that during decedent's lifetime he owned the real estate and that it had been conveyed. She alleged further that the land in question was within the city limits of Cherryvale and comprised more than one acre; that it lay in two separate tracts and that it was not occupied by the decedent and his family at the time of his death; that Margret had not occupied it as a home for years prior to decedent's death, but had abandoned it; that it was a part of the individual property of the decedent, which he had owned for many years prior to his marriage; that Margret had relinquished all her right to it; that the time for filing claims against the estate expired on April 28, 1948, and the claim for the proceeds of the homestead was not filed until July 8, 1948, and that Margret was barred by her own laches. Margret demurred to that answer for the reason it constituted a claim and demand against the estate of decedent and was not filed within nine months after the date of the first publication of administrator's notice of appointment. This demurrer was overruled on July 27, 1948. On the same date Margret filed a supplemental petition and reply in which she alleged the relationship of the parties and that she and Carrie Bell were each entitled to receive one-half of the estate; that none of her rights had been barred by the nonclaim statute because her original claim had been filed on July 3, 1947. She further alleged that Carrie Bell's allegations filed on July 3, 1948, with reference to the agreement constituted a claim against the estate which was barred by the nonclaim statute; that on June 20, 1947, Carrie Bell filed her petition for administration and alleged then that Margret was the widow and heir of decedent; that Carrie Bell knew then about the marriage contract and that she should have known that this contract had been later rescinded and that relying upon the allegations in that petition Margret waived her rights to administer the estate and consented to the appointment of an administrator and that Carrie Bell was estopped from claiming that Margret was not an heir of the estate. She further alleged that the marriage settlement entered into between decedent and her was rescinded as fully as though no such contract had been entered into in consideration of Margret's consenting to the alienation of the homestead. She prayed the court for her statutory al-

lowance in the sum of $750 and for possession of the homestead property and for determination that she and Carrie Bell were the sole heirs of decedent.

On July 28, 1948, the probate court heard all the issues then set up and found generally for Carrie Bell and specifically that the contract, which has heretofore been quoted in this opinion, was in full force and effect at the time of decedent's death and was controlling as to the distribution of the assets of his estate; that by reason of the contract Margret was not entitled to a widow's statutory allowance or any homestead interest or to share in the distribution of the estate.

The court further found that decedent died intestate at Cherryvale on July 24, 1947; that the estate had been fully administered; that there were no inheritance taxes due and that Carrie Bell, the daughter of the decedent, was the sole heir.

This order was appealed to the district court. Margret in the district court demurred to the part of the petition of the administrator for final settlement on June 19, 1948, as follows:

"That the claim of the above named heir of the said decedent in and the assets of this estate, which this petitioner verily believes to be correct, according to law, is as follows: That the said Carrie Bell, decedent's daughter, is entitled to all of the assets of this estate, both real and personal, after payment of administrative expenses. This petitioner verily believes that the surviving widow of the decedent, one Margaret A. U. Welch, in no wise participates in the distribution of the assets of this estate by reason of a certain post-nuptial agreement in writing, a certified copy of which has been exhibited to this administrator, and is on file with this Court."

The demurrer was also directed at certain parts of the answer of Carrie Bell filed on July 3, 1948, and to a certain part of the answer of Carrie Bell filed on July 28, 1948. The reason given for the filing of this demurrer was that the allegations referred to constituted a claim against decedent's estate, which had not been filed in the probate court within nine months after the time of the first publication of the administrator's notice of appointment and were not a legal defense to Margret's petition. This demurrer was overruled in the district court and the case was appealed to this court. On appeal we held:

"A marriage contract, assuming it cuts off all rights of an heir, the decedent's widow, to inheritance, to a widow's allowance and to homestead rights, and assuming it grants the entire estate to another heir, the decedent's daughter, takes nothing out of the estate which would otherwise be distributed to the other heir, the widow. It only determines which one of the heirs shall receive

the assets of the estate and does not constitute a claim or demand against decedent's estate which must be asserted by the daughter within the period of the nonclaim statute.

"A marriage contract such as that described in paragraph 1 may be asserted by an heir, the daughter, at the hearing for final settlement and distribution in defense to prior pleadings of another heir, the widow, in which the latter asserts the rights of an heir and widow whose husband died intestate.

"The demurrer of the widow to a petition of the administrator for final settlement and distribution and to portions of answers filed by the daughter to petitions of the widow was properly overruled in view of factual issues joined by the pleadings as set forth in the opinion.

"The motion of the daughter, appellee, to dismiss the widow's appeal to this court examined, considered and held to be without substantial merit." (See *In re Estate of Welch,* supra).

The judgment of the district court in overruling the demurrer was affirmed and the cause remanded to the district court for further proceedings.

When it came on for trial Margret demanded a jury trial. This was overruled. The cause proceeded to trial by the court. Carrie Bell introduced the written contract, which was admitted over the objection of Margret. Carrie Bell then rested.

Margret argues first that the court erred in overruling her demand for a jury trial. In support of this she points out G. S. 1947 Supp. 59-2408. That is the section providing for trials in the district court of appeals from probate court. It provides, in part:

". . . appeals other than those from the allowance or disallowance of a demand, . . . shall be tried by the court without a jury, but the court may call a jury in an advisory capacity. . . ."

She argues that her claim for revocation of a marriage settlement was a demand against the estate and under the provisions of the foregoing statute, since she was urging in the district court that the contract had been revoked, she was entitled to a jury trial on that question. That question was settled in this case by our holding when the appeal was here before. (See *In re Estate of Welch,* supra.) The last sentence of the first paragraph of the syllabus reads:

"It only determines which one of the heirs shall receive the assets of the estate and does not constitute a claim or demand against decedent's estate which must be asserted by the daughter within the period of the nonclaim statute."

The question was carefully considered by us and is treated at length in the opinion. No good reason is advanced why we should open the matter again. Once we concluded that a marriage con-

tract is not a demand under the nonclaim statute, it follows that the question of whether such a contract was rescinded does not require a jury under G. S. 1947 Supp. 59-2408.

Margret next contends that the agreement authorized decedent to convey or sell his property without her consent but did not bar her from inheriting from decedent nor from receiving the widow's statutory allowance. She bases that argument on a portion of the contract which will be set out here now even though the entire contract has heretofore been included in this opinion. It reads, as follows:

"The party of the second part likewise agrees that she shall have and claim no right, title or interest in or to any of the property, either real or personal, which the party of the first part now owns or which he may hereafter individually acquire, and to that end she hereby expressly releases, surrenders and quitclaims unto the said first party, his heirs, executors, administrators, or assigns, any and all right, title, or interest in or to such said property of the first party, which she might otherwise acquire by reason of being the wife of such first party and she further agrees that the party of the first part may own, sell, devise, bequeath, pass by inheritance, or otherwise manage or dispose of such said property belonging to him in the same manner and to the same extent as though he were a single person."

It is difficult to read this meaning into the language quoted. In the first clause thereof Margret agreed that she should have and claim no right to any of the property which decedent owned or which he might thereafter acquire. Then she released to his heirs or administrators any right, title or interest which she might otherwise acquire by reason of being the wife of decedent. Then she agreed that decedent might devise, bequeath or pass by inheritance any of his property to the same extent as though he were a single man. These provisions as clearly barred appellant from inheriting from decedent as words could do it. Furthermore, the pleadings filed by Margret during the course of this litigation indicate such was her intention, since she pleaded time and again that the reason she should inherit was that the contract had been rescinded by both parties. We have examined the authorities relied on by Margret to sustain her argument and find the contracts treated therein to be distinguishable. In *McVicar v. McVicar*, 128 Kan. 394, 278 Pac. 36, we considered a contract not nearly so clear in its terms as this and held it barred the second wife from inheriting. We distinguished the contract from the one treated in the case of *Kistler v. Ernst*, 60 Kan. 243, 56 Pac. 18, and *Rouse v. Rouse*, 76 Kan. 311, 91 Pac. 45, upon which appellant relies here. We said that no

strained interpretation of language would be permitted to strip a surviving spouse of her inheritance. We said further, however:

"In the case at bar, however, the parties agreed that their respective properties should remain and be their several respective properties the same as if each of them were unmarried, and further—

" 'The said Hattie L. Booth shall not acquire by force of said contemplated marriage, for herself, her heirs, . . . any interest in his (George A. McVicar's) property or estate. . . .'

"McVicar's renunciation of interest in his affianced wife's property was reciprocally sweeping in its terms, and this court finds it impossible to qualify or limit the fair meaning of this language. It simply means what it says. Neither George nor Hattie, nor their heirs, were to acquire any actual, potential, or inchoate rights in each other's property as a consequence of their contemplated marriage; and the trial court did not err in its judgment to that effect."

We will not indulge in a strained interpretation of language to strip a spouse of her right to inherit, neither will we ignore the clear and unequivocal meaning of words used in a contract. To ascertain the intent of the parties is the fundamental rule in the construction of contracts. In such construction we look to the language employed and the conduct of the parties and all the surrounding circumstances. (See *Berg v. Scully,* 120 Kan. 637, 245 Pac. 119.)

Margret next contends that this agreement which she terms an antenuptial contract would not operate to bar her from receiving her statutory allowance and homestead.

On account of the unusual manner in which the issues of this case were made up, it is not clear as it might be as to what questions of fact were presented to the trial court.

At the conclusion of Margret's evidence, however, Carrie Bell demurred to it for the reason that such evidence had not proved the recision of the contract or the existence of a homestead. This demurrer was overruled and at the conclusion of the evidence both sides requested findings of fact on those two questions. The court found:

"4. That said post nuptial agreement above referred to was at no time revoked or set aside, and was in full force and effect at the time of the death of the said F. M. Welch.

.    .    .    .    .    .    .    .    .    .    .    .

"6. That the above described real estate was never occupied by the deceased, F. M. Welch and Margret A. U. Welch, his wife, after their marriage and during his lifetime nor was it ever occupied by his widow, Margret A. U. Welch at any time thereafter, but their homestead while they lived together was in the home of the property owned by the wife, Margret A. U. Welch."

Following the findings, the trial court concluded as a matter of law:

"CONCLUSIONS OF LAW:

"1. That the widow, the appellant, Margret A. U. Welch, is barred from all inheritance rights in the estate of the deceased, F. M. Welch, or any homestead right in the proceeds of sale of said property.

"2. That the entire estate, after payment of debts, taxes, costs of administration of said estate, descends to Carrie Bell, the daughter of the said deceased by a former marriage.

"3. The former order of distribution of the estate of the deceased, F. M. Welch, by the Probate Court of Montgomery County, Kansas, is hereby approved. The costs of this appeal to be paid by the appellant, Margret A. U. Welch."

There was ample evidence to support these findings. As a matter of fact, as to the homestead feature, there was no evidence to the contrary. Even Margret's own witnesses testified she and deceased never at any time had occupied the premises in question. The inventory filed by the administrator shows no homestead and it was conceded at the oral argument there was no homestead. As to the widow's allowance, that is statutory and may be waived by contract. Hence it is not necessary for us to decide whether this was a post-nuptial or antenuptial contract.

Margret next argues that the decision of the trial court was contrary to the evidence. The question of fact to be tried we have heretofore pointed out. Margret introduced some evidence tending to establish her position. Margret argued that the evidence was such as to require a finding that the contract was rescinded. But little would be added to this opinion by setting out herein the evidence. Margret sets out the evidence offered by her to show rescision. Carrie Bell and the administrator set out the evidence offered by them to show the contract was not rescinded. The matter was settled by the trial court's finding. (See *Hughes v. Vossler*, 112 Kan. 466, 211 Pac. 123; and *Trager v. Elliott*, 106 Kan. 228, 187 Pac. 875.)

The judgment of the trial court is affirmed.

WEDELL, J. (dissenting): I cannot agree the daughter, appellee, was entitled to recover more than an inheritable share of her father's estate. This view is not based on an interpretation of the contract which her father made for her benefit and on which she relied. It is grounded on the fact the daughter failed, as required by law,

to present her claims, based on such contractual rights, to other portions of her father's estate, in opposition to the widow's timely claim thereto. My reasons for this view are more fully set forth in a former separate opinion involving a previous chapter of this same litigation. Further treatment of the subject is unnecessary. (See *In re Estate of Welch*, 167 Kan. 97, 204 P. 2d 714.)